RUNGE, Petitioner v. STATE, Respondent

(190 N.W.2d 381)

(File Nos. 10894, 10895. Opinion filed September 28, 1971)

**Acie W. Matthews,** Sioux Falls, for petitioner.

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, for respondent.

BIEGELMEIER, Presiding Judge.

These are appeals from orders denying relief requested under our Uniform Post-Conviction Procedure Act, SDCL 23-52.

In #10894 a complaint was filed on February 19, 1968, in the municipal court at Mitchell charging petitioner with a burglary, herein sometimes designated as the Daily Republic burglary. Taken before that court it appeared he was 16 years of age so he was transferred to the juvenile division of the Davison county court which, the same day, entered an order remanding him to the municipal court for further proceedings.

On March 20th upon advice of his attorney, whom his parents had retained, he waived a preliminary hearing and was bound over to circuit court where an information charging him with the third degree Daily Republic burglary was filed.

On April 2nd accompanied by his attorney and his parents he appeared in circuit court and was arraigned on an information charging him with that burglary. The presiding judge conducted an inquiry wherein he asked questions directly of petitioner, his attorney and his parents. Petitioner then entered a plea of guilty and after further inquiries and a statement by his attorney the judge announced the court would postpone the imposition of sentence until the first day of the November 1968 term of court under certain conditions. These were set forth in an order to that effect which placed petitioner on parole, in custody of his parents and under supervision of an agent of the department of probation and parole. This order was evidently entered under a statute which provides a court "may suspend the imposition of sentence and place the defendant on probation". See SDC 1960 Supp. 34.3708-2 as amended by Ch. 186, S.L. 1961, now SDCL 23-57-4. Petitioner had promptly furnished bond for his appearances and so was at liberty thereafter as to this charge.

On July 11, 1968, the Mitchell Prairie Market was burglarized. Entrance was obtained by cutting a hole in a side of the building. Vending machines were broken into and among other property a case of rifle shells and about 100 cases of beer were stolen. Acting on a tip officers placed a stakeout on a cave located on an abandoned farm where about 60 cases of the stolen beer were cached. Later petitioner and three other persons were observed at the site loading some of the beer in a station wagon which was shortly thereafter stopped on the highway by the officers. It contained 10 cases of the stolen beer covered by a blanket. Petitioner was driving the station wagon which was owned by his father.

On the recovery of this Prairie Market burglary property, a complaint was filed in the same municipal court on July 22, 1968, charging petitioner with that burglary. A like order was made

that day transferring petitioner to the juvenile division of the county court which, the next day, entered an order remanding him to the municipal court for further proceedings.

On August 9, 1968, by reason of petitioner's arrest for the Prairie Market burglary and other claimed violations of the conditions of his parole and the order suspending imposition of sentence theretofore made as to the Daily Republic burglary, petitioner was brought before the circuit court at the request of the agent of the board of pardons and paroles under whose supervision petitioner had been placed. An extensive hearing was had as to why the order postponing imposition of sentence should not be revoked and petitioner sentenced on his plea of guilty. He appeared with counsel and witnesses for the state were sworn and testified. Petitioner's counsel cross-examined these witnesses, but offered no evidence contrary thereto. At the conclusion of that hearing the court entered an order setting aside the order postponing the imposition of sentence. The presiding judge was the same judge who had entered the earlier postponing order. After some further colloquy between the judge, petitioner and his counsel, petitioner was sentenced for the Daily Republic burglary to four years in the reformatory section of the state penitentiary.

Returning now to the Prairie Market burglary charge, three days later on August 12, 1968, on advice of the same attorney who appeared with and for him, petitioner waived a preliminary hearing in the municipal court and was bound over to circuit court. Later that day he was arraigned on an information filed in circuit court charging him with the Prairie Market burglary in the third degree. He appeared with his counsel and his father and entered a plea of guilty. The court sentence was for a similar four years to run concurrently with the four-year Daily Republic sentence. Both of these sentences were commuted to three years and six months by the Governor.

The post-conviction court entered findings of fact, conclusions of law and a judgment denying the relief sought by petitioner and he appeals.

██ ██    Petitioner contends that in #10894 (the Daily Republic burglary) his claimed interrogation after midnight when he and others were found hiding beside the building in possession of some of the fruits of the break-in was in violation of the Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 decisions. While petitioner testified he walked over to the officers' car and was asked what building he had broken into,[1] his counsel testified petitioner had never indicated he had made any admissions to the police and the case was not based on any claimed admissions. Petitioner's contention is thus without basis as the court found there was no evidence of improper interrogation. Further Escobedo and Miranda are not apposite. The latter decision held that noncompliance with any one of the Miranda requirements of warnings makes the statements obtained by law enforcement officers during in-custody interrogations inadmissible. Coleman v. Alabama, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, Stewart, J., dissenting. Additionally, petitioner's claim is academic for he entered a plea of guilty to the information. The court made this plain in State ex rel. Condon v. Erickson, 1970, S.D., 182 N.W.2d 304, when it wrote:

"It is well settled that judgment on a plea of guilty which is entered voluntarily is not rendered invalid because for some reason the defendant had previously made a confession under circumstances which might have rendered it inadmissible, if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandably made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all nonjurisdictional defects in the prior proceedings against him. The judgment and sentence which follow the plea of guilty are based solely upon the plea and not upon any evidence which might have been acquired improperly by the prosecutor. Thus, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis of a collater-

---

1.  State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470, and Utsler v. State, 84 S.D. 360, 171 N.W.2d 739.

al attack upon a judgment of conviction entered upon a plea of guilty which was voluntarily and understandably made."

Petitioner next argues he was denied due process of law on his claim he was not afforded a hearing in the juvenile division of the county court on July 23, 1968, basing this claim on the first part of SDCL 26-11-4. This was formerly part of SDC 43.0313 as amended by Ch. 164, S.L.1968 which reads:

"The court may, in its discretion, in any case of a delinquent child, after transfer hearing, permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of municipal ordinances. In such cases the petition filed under this chapter shall be dismissed."

In July 1968 the laws in effect with reference to the proceedings to be followed as to persons arrested under 18 years of age were found in SDC 43, as variously amended. SDC 43.0318, as amended by Ch. 214, S.L.1961, provided:

"If the arrest be for any other offense * * * if such child is taken before a * * * municipal court upon complaint sworn out in such court * * * it shall be the duty of such * * * municipal court to transfer the case to the county court and the officer having the child in charge to take the child before that court and in such case the court may proceed to hear and dispose of the case in the same manner as if such child had been brought before the court upon petition originally filed therein, as provided in this chapter; or when necessary, in cases where the delinquency charge would otherwise constitute a felony, the county court may direct that such child be kept in proper custody until an information or complaint may be filed against him as in other cases under the criminal laws of this state."

The quoted part of this section did not change the original SDC 43.0318; the change was in the prelude thereto which permitted prosecution of certain motor vehicle violations as if the persons were over 18 years of age. Nor did Ch. 164, S.L. 1968, effective July 1, 1968, which amended many sections of SDC 43.03, make any change in SDC 43.0318. Not being an adjudicatory hearing, it did not require a verbatim record; it was conducted under such rules as that court prescribed to inform it as stated therein. Prior thereto the hearings were "informal in their nature", SDC 43.0327.

The statutes and the piecemeal amendments are not examples of clarity. Where a child under 18 years of age was arrested, the county court's authority to act was contained in SDC 43.0318, as amended in 1961, and not specifically under SDC 43.0313, as amended in 1968. The former (an arrest case) allows that court to proceed to hear and dispose of a case in the same manner as if the child had been brought before the court upon petition originally filed therein. However, when a felony is charged the court may in effect permit a criminal prosecution by directing custody until a complaint be filed, and as one had been filed here and there was custody such an order was superfluous. The conclusion that SDC 43.0313 does not apply is required for if the court decides to permit a criminal prosecution it states the "petition filed under this chapter shall be dismissed". The complaint cannot be this petition for it would then be dismissed when in fact it remains the basis of the action originally filed.

As indicated above the municipal court did by written order transfer the action charging petitioner with burglary in the third degree, a felony, to the county court on July 22, 1968. The next day that court entered an order set out in the margin.[2]

A transcript of the hearing in the county court was not made a part of the settled record. It appears the post-conviction court

---

2. "the Court being of the opinion that the ends of justice would be best served if said County Court would waive jurisdiction in the matter and remand the same to the Municipal Court of the City of Mitchell, County of Davison, State of South Dakota; NOW, THEREFORE, IT IS HEREBY ORDERED, that the above entitled matter be and the same is hereby remanded to the Municipal Court of the City of Mitchell, County of Davison, for further proceedings and the County Court does hereby waive jurisdiction in said matter. Dated this 23d day of July, 1968."

made an order sometime after that hearing admitting the transcript of the juvenile court hearing on which this order was based; petitioner's counsel asserts it was inadvertently omitted from the settled record and has attached a copy as an appendix to petitioner's brief.

Complaint is made that this transcript shows that petitioner was never advised by the court of his right to a hearing, nor did his counsel there raise the question of such hearing or call the court's attention to Kent v. United States, 1966, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. His counsel argues that under Kent and Application of Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, petitioner was not given a fair hearing and was thus deprived of due process of law.

Without departing from our rule that we are bound by the settled record, the transcript shows substantially the same proceedings were taken as other evidence indicates and on which the post-conviction court considered and decided the petition. Petitioner appeared in person and by his attorney, and a copy of the complaint charging the burglary felony was handed to petitioner and his counsel. It was read in full as well as the order transferring it to the county court. The county judge made a statement indicating his position that the county court had no jurisdiction, under the South Dakota Constitution, of felonies and he could see no other way to proceed except to remand it to the municipal court. His counsel argued that the court should make an investigation as to indigency and made other suggestions and arguments that the charge might be a misdemeanor or one of receiving stolen property, and the questions of an illegal search and seizure, etc. were involved. The county judge, however, stated that as the complaint charged a felony he had no jurisdiction except to remand the action to municipal court, which he did by the noted order.

The post-conviction court wrote an extensive memorandum opinion with, and comments on, many authorities cited in considering this order and petitioner's claims of illegality thereof. It concluded that though the county judge was in error in stating

the county court had no jurisdiction under Art. V, § 21, of our Constitution[3] and that it did have jurisdiction under our laws to proceed to hear and determine the proceeding to retain jurisdiction or remand it to municipal court, it had not deprived petitioner of any constitutional right.

■ The circuit judge's opinion noted:

"When Runge appeared in Juvenile Court for the Prairie Market burglary, he had already been sentenced to four years in the reformatory section of the penitentiary on the Daily Republic case. At this time the protestation of his counsel concerning the previous ruling must have still been fresh in Runge's mind. Neither he nor his counsel made any great protestation of the County Judge's ruling. The reason is obvious. He was under sentence to the reformatory section of the state penitentiary. If Judge Tice had held a hearing as required by law, in all probability petitioner would have been transferred for prosecution. He knew this, his lawyer knew it, and his parents knew it.

"According to the testimony presented at the revocation hearing, the state had an airtight case. Kirby (his attorney) knew this and the defendant knew it, so the best possible course was to waive the proceedings and get a concurrent sentence. This was done. Under the facts and circumstances, this was the best possible course of action by the defendant. It is my opinion the defendant saw the futility of his position and did waive any irregularity committed by the County Court when he intelligently and voluntarily pled guilty to the Prairie Market burglary."

The court made the opinion a part of its findings of fact and conclusions of law. While these grounds appear cogent, yet, assum-

---

3. "The county court shall not have jurisdiction in cases of felony".

4. The post-conviction court's opinion stated it was error not to conduct a hearing on his disposition of the matter.

ing the county judge was in error[4] in the reasoning he applied to the issue before him, petitioner had an ample remedy for correction of any error in the entering of the order assailed — that was of appeal under SDC 43.0333, as amended by Ch. 164, S.L.1968, then effective. That section[5] provided:

> "An appeal may be taken to the circuit court from a judgment, decree, or order of the county court under the provisions of this chapter, within the time and in the manner provided in chapter 35.21. \* \* \*"

The appeal could have been on questions of law alone or law and fact, which would permit a trial de novo. See SDC 1960 Supp. 35.21. There under the practice and procedure existing in South Dakota a record may be made of the evidence taken at a trial or contested hearings which are transcribed for purposes of appeal. That has never been a requirement in county court, and to now hold that an order of that court may be challenged for the procedural defect or error in construction of a statute or the constitution by collateral attack rather than by appeal would jeopardize many judgments involving property and rights declared therein. Having a remedy by appeal to correct any error in the order, in the due process of law it did not result in loss of jurisdiction nor deprivation of any constitutional right of petitioner.

That petitioner's pleas of guilty were freely and voluntarily entered appears from the evidence which amply supports the court's findings in that respect, and we do not understand counsel to seriously question it. Nor could it be. See Nachtigall v. Erickson, 85 S.D. 122, 178 N.W.2d 198. His parents had immediately employed counsel for him, were kept advised of the proceedings by his attorney, furnished bonds for his releases and appeared with him in some court appearances. He asked for and was visited by his spiritual advisor. At the post-conviction hearing he testified as to his pleas of guilty, the revocation proceedings and his possession of property stolen in the Prairie Market burglary that:

---

5. The South Dakota Compilation Commission or the legislature may later have altered the situation by inserting this section in Chapter 26-8 of SDCL while placing SDC 43.0318 in Chapter 26-11. It did not alter petitioner's right to appeal then existing.

"we couldn't fight that one because it was right out in the open, no way of getting around it. * * * we discussed that * * * I had to plead guilty to that, and I couldn't fight the next one because any sentence would run consecutive then."

Do the Kent and Gault opinions, supra, require voiding the sentences as petitioner asserts? We turn to and discuss them with some observations. The 1966 Kent opinion involved a not guilty plea, a jury conviction and direct review of decisions of Federal courts in which the Supreme Court held the proceedings in the juvenile court in determining "vitally important statutory rights" of a minor were not in accord with the District of Columbia certification statute. It did not reach constitutional dimensions.[6] Gault (1967) held the due process required notice of the alleged misconduct with particularity — not conclusions, of the right of counsel or that one would be appointed if the minor or his parents are unable to afford it, and rights of confrontation, cross-examination and the privilege against self-incrimination applied. That opinion concerned a proceeding to determine whether a minor was delinquent which may result in commitment in a state institution as Justice Fortas stated at one place in the majority opinion. Here Runge had retained counsel who appeared with him at all hearings and advised him of his rights as did the county court.

In Neller v. State, 1968, 79 N.M. 528, 445 P.2d 949, a petition was filed in juvenile court charging a 16-year-old child with armed robbery. The statute provided " 'after full investigation * * * the court may in its discretion certify such child for proper criminal proceedings to any court' ". After a hearing at which he was not represented by counsel and no witnesses were called, the court entered an order transferring the matter to the criminal docket. An attorney was then appointed for him who waived a preliminary hearing and a guilty plea was entered. Thereafter he filed a petition for relief alleging the lack of counsel and he was not advised of his rights as required by law. The

---

6. See McKeiver v. Pennsylvania, United States Supreme Court, June 21, 1971, hereafter cited.

court concluded there may be a waiver of representation of counsel at the county court certification hearing and the waiver is accomplished "when, upon arraignment with counsel in district court, no objection is made to the failure to be represented by counsel during the juvenile court investigation." The court's reasoning was:

"We would observe that as far as a juvenile is con-
cerned, the juvenile court proceedings under § 13-8-27
(the certification hearing), supra, are in addition to the
hearings that follow — preliminary hearing and there-
after. Upon transfer to the district court, the juvenile is
denied nothing by way of hearings and other protections
that are accorded adults. If that procedure is sufficient
for adults we do not understand that a juvenile has a
constitutional right to more. * * * The juvenile
court law provides for an additional determination not
accorded an adult. If at the time of arraignment, com-
plaint had been made that counsel had not been provid-
ed in juvenile court, we consider it would possibly have
been error for the district court to refuse to remand to
the juvenile court for a proper hearing. * * * But if
no objection is voiced, what reason can be advanced
to hold there was no waiver of such defect in juvenile
court when it is clear that the same shortcoming in the
preliminary hearing was effectively waived?" Acc: State
v. Salazar, 79 N.M. 592, 446 P.2d 644.

The courts are not in agreement as to whether there is a significant difference between a confinement order, to which Gault applies, and a certification order, to which some courts hold it does not apply. Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874, and State v. Hance, 2 Md.App. 162, 233 A.2d 326, hold there is a difference and Steinhauer v. State, 1967, Fla.App., 206 So.2d 25, holds there is no difference. The cases are collected in Eyman v. Superior Court In And For County of Pinal, 1968, 9 Ariz. App. 6, 448 P.2d 878, and an extensive symposium of critical analysis and comment appears in 43 Ind.L.J. 523 through 676. It discusses Kent, Gault and their import, extent and meaning. See also 114 U.Pa.L.Rev. 1171.

The Supreme Court of the United States in its most recent decision involving juvenile court procedures, McKeiver v. Pennsylvania, 1971, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, declined to constitutionally extend the right of trial by jury to a proceeding by which a determination is made as to whether a juvenile is a "delinquent", in consequence of which he may be committed to a state institution. The opinion of Justice Blackmun stated it was apparent from six prior opinions cited that some constitutional requirements attendant on state criminal trials have application to that part of the state juvenile proceeding that is adjudicative in nature and those decisions "do not spell the doom of the juvenile court system or even deprive it of its 'informality, flexibility or speed.' " These phrases are refreshing to those who have participated in and have "appreciation for the juvenile court judge who is devoted, sympathetic and conscientious" as that opinion phrases the thought. There were some who were in fear that the informality, intimacy and valued contribution to our society of the juvenile courts and their judges were doomed by recent prior decisions of the court to reduce it to a wholly adversary tribunal with all the attributes of a criminal trial (with its faults and defects) which would be destructive of the purpose and function of juvenile courts.[7] Petitioner received judicial mercy on his first plea of guilty when the court postponed imposition of sentence. Had he kept faith with the sentencing court it is probable no sentence would have been imposed, but, as the court said, "I gave you your chance, you muffed it".

Viewing the record in the light of the opinions of the United States Supreme Court we perceive no constitutional infirmity in the sentences involved.

---

7. We share in the opinion of Justice Roberts of the Pennsylvania Supreme Court, quoted in McKeiver, that the court in Gault evidenced a "fundamental and far-reaching disillusionment with the anticipated benefits of the juvenile court system", and that judges of those courts "take a different view of their role" than that taken by those in some criminal courts. We assume Justice Roberts was familiar with the courts in his state as we are with our own dedicated and conscientious county judges. The inadequacy of juvenile court judges mentioned in the Task Force Report referred to in note 4 of the McKeiver opinion stating the percentage of such judges without college education, degrees or bar membership does not apply to our state as they are required to be members of the bar with recognized law degrees and prior foundation education. Can it be said, however, that judges with less training are lacking in compassion or understanding?

■ Citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the court in McMullen v. State, 84 S.D. 538, 173 N.W.2d 499, wrote the effect of a plea of guilty was more than a confession the accused did the acts complained of, it was, in itself, a conviction and nothing remained but to give judgment and determine punishment. Consonant therewith and with Nachtigall v. Erickson, 85 S.D. 122, 178 N.W.2d 198, and State ex rel. Condon v. Erickson, 85 S.D. 302, 182 N.W.2d 304, the court properly denied the relief sought.

■ We have not overlooked the now familiar claim that petitioner did not have adequate assistance of counsel. The court found he had such assistance,[8] the evidence supports it and we may not upset the finding. Nachtigall v. Erickson, supra. Complaint is made the court erred in adopting the memorandum opinion as part of its findings of fact and conclusions of law, a practice similar to that used in Federal courts. There is no inconsistency in them and we conclude no error resulted.

The judgments are affirmed.

HANSON, WINANS and WOLLMAN, JJ., concur.

---

8. His counsel knew a search of petitioner's home, under a search warrant, had produced a pistol stolen from a store; that petitioner and his confederates used walkie-talkies in the Prairie Market burglary, which indicates they were not novices, and he secured a psychiatric examination of petitioner; talked with, and had a written report from, the doctor. The post-conviction judge found his counsel performed a "commendable" service.