507 P.2d 123

**STATE of Arizona, Appellee,**

v.

**John YARD, III, Appellant.**

No. 2444.

Supreme Court of Arizona,
In Banc.

March 16, 1973.

Gary K. Nelson, Atty. Gen., Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

B. Michael Dann, Phoenix, for appellant.

LOCKWOOD, Justice:

This is an appeal from an order of the Juvenile Court transferring the juvenile herein to adult court for prosecution. The

defendant raises the following questions: (1) whether the order transferring the juvenile to adult court for prosecution is valid: (a) where no sufficient notice of the juvenile court proceedings and their rights thereat was given to appellant's parents; (b) where the juvenile court appointed counsel so tardily that appellant was denied his right to the effective assistance of counsel at the transfer hearing; (c) where the written transfer order does not specify sufficient reasons for the action taken and (d) where there was no sufficient evidence to justify appellant's transfer to adult court in any event; (2) whether the record affirmatively shows that appellant's guilty plea of the charge of rape was voluntarily and intelligently made; and (3) whether the record affirmatively shows that the appellant validly waived his right to a preliminary examination before a magistrate.

The facts apparently are these: the juvenile was committed to Fort Grant prior to his fourteenth birthday in January, 1971 as a runaway. Somctime thereafter on August 16, 1971 he was charged in magistrate's court with the rape and sodomy of a special education teacher at Fort Grant.

The records show that three hearings of varying durations were held before the Judge of the Superior Court of Graham County, sitting as a Juvenile Court Judge. The first hearing was held on August 23, 1971. There were present the judge, the county attorney and the defendant. The court informed the defendant of the charges and set a time for the hearing. He also asked if the defendant wanted an attorney appointed for him. Upon the answer that he did, the court said, he would examine into defendant's qualifications for appointed counsel and set a transfer hearing for August 31, 1971.

On August 31, 1971 a hearing was held. The parents of the defendant did not appear but an undated letter from the mother was admitted, and evidence given that the probation officer had talked with the mother by telephone, that she wanted an attorney appointed for the defendant and

that she would be unable to attend the hearing. The letter corroborated this. The court then appointed Irval Mortensen as defendant's attorney and the following appears on the record:

"THE COURT: Very well, let the record show we have the same group we had here this morning except we have Mr. Irval Mortensen as the Court appointed Attorney to represent the Juvenile, John Yard.

"Let the record show that Mr. Mortensen has had what, an hour or so?

"MR. MORTENSEN: Yes.

"THE COURT: To visit with Mr. Yard. Do you wish some additional time Mr. Mortensen, or are you ready to proceed at this point?

"MR. MORTENSEN: I don't feel adequately prepared at this point but I do think we could proceed and * * *.

"THE COURT: At any time if you want some additional witnesses, or additional time, why don't we proceed that way. We do have * * * what do you have, two witnesses from the State, Mr. Layton?

"MR. LAYTON: Yes.

"THE COURT: And if you want additional witnesses or anything you make your request and we will surely try to grant it if at all possible.

"Mr. Mortensen, we will tell you that both of the State's witnesses have been sworn.

"You may proceed, Mr. Layton.

"MR. MORTENSEN: I haven't seen any of the papers that have been filed.

"Do I understand that this hearing is to determine whether or not this Juvenile should be remanded as a Juvenile or treated as an Adult?

"THE COURT: Eunice don't take this. I am going to read this part of the minutes of last week (Off the record)."

The hearing then proceeded. Dr. John Tovrea the resident psychologist at Fort Grant and the victim both testified, and

were cross-examined. Tovrea testified that he had been at Fort Grant approximately a month and a half. He testified from the record of defendant at Fort Grant although he (Tovrea) had only known defendant a short time.

Tovrea testified from defendant's file that the defendant had a record of having been in the Arizona State Hospital; that he had a low IQ with a performance scale IQ of 55, full scale IQ of 58, and a previous evaluation with a full scale IQ of 65; that in the hospital file was a statement that "[f]rom a psychiatric point of view, * * * the patient impressed me as having no insight into his problems, and no insight whatsoever to the possible consequences that his actions may have for himself, or for others." He also testified the defendant "knows what he wants and how to get it, and what the results will be."

The victim testified as to facts concerning the event. Defendant was not called to testify. At the completion of the testimony, the county attorney recalled Tovrea and the following testimony was had:

"Q. Now Dr. Tovrea, would John Yard, after having made the assault as testified to by Mrs. Vuke, and then having pushed her back against the blackboard and having told her, now I've got to run you stay there until I get to the bushes, would that indicate that he did, or he did not, realize the possible or probable results of his acts?

"A. That he did realize the results of that act.

"MR. LAYTON: That's all I have."

The judge shortly thereafter stated:

"THE COURT: Let the record show the Court finds that the best interests of the State of Arizona, and the best interest of the juvenile, John Yard, can be served by referring him to adult Court for prosecution."

We are of the opinion that the record shows lack of due process in the handling of the juvenile. No attorney was appointed for the juvenile until the day, nay, practically the hour, of the transfer hearing. The attorney appointed to represent the juvenile obviously was unprepared. He had not seen any of the papers, and did not know the nature of the hearing. At the end of the testimony he stated "I don't think I would want to have it continued or call any other witnesses."

The late appointment of counsel, with only "an hour or so" conference with his client, is a denial of the right to effective assistance of counsel.

It is obvious from the transcript of the first hearing that the court had determined from the nature of the case that it should conduct a transfer hearing. The rules for such hearing are specifically set forth in Rules 12, 13 and 14 of 17 A.R.S. Juvenile Court Rules (1970). Rule 12 provides that:

"Transfer for Criminal Prosecution; Initiation of Proceedings

"If, at any time prior to an adjudication, in the opinion of the juvenile probation officer or the County Attorney, the offense, social history and the age of the child indicate a probable transfer to another court or division of the Superior Court for criminal prosecution, the parties and counsel, if any, shall be so advised. *If a transfer hearing* is requested, *the juvenile probation officer shall conduct a transfer investigation,* the report of which shall contain an evaluation of the child, including the social background of the child, any previous delinquent history, and all social records that are to be made available to the court at the transfer hearing. The report of the *transfer investigation shall be made available to all parties or counsel prior to the hearing.*" (Emphasis added.)

Rule 13 reads:

"Transfer Hearing; Notice

"A transfer hearing shall be conducted only by a judge except as provided in Rule 11. *Parties* shall be given not *less than 5 days notice of a transfer hearing,* unless the time is waived by the parties or *their counsel,* if any." (Emphasis added.)

Rule 14 provides:

"Transfer Hearing; Order

"(a) The transfer hearing shall include evidence of the offense alleged, unless waived, *and of the transfer investigation report*. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations.

"(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense *if the court finds probable cause and reasonable grounds to believe that:*

"(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and

"(2) The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill persons; and

"(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

"(c) *Upon such transfer the juvenile court shall state the reasons therefor by minute entry or written order* and the child shall thereupon be transferred to the custody of an appropriate law enforcement officer, released on bail, if the offense is bailable, or released upon his own recognizance." (Emphasis added.)

In the first place, nowhere in the record does there appear a transfer investigation conducted by the juvenile probation officer who appeared at the hearings. Although he testified that the letter which is in evidence was from the juvenile's mother, (corroborated by the juvenile) it is not dated and he did not testify as to when it was sent.

More serious, however, is the fact that the court utterly failed to make the necessary order for commitment which includes the three elements set out in Rule 14(b)(1), (2) and (3). In re Maricopa County Juvenile Action No. J–72804, 18 Ariz.App. 560, 504 P.2d 501 (1972).

As was said in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966):

"*Meaningful review* requires that the reviewing court should *review.* It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. *It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made.* Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; *and it must set forth the basis for the order with sufficient specificity to permit meaningful review.*" 383 U.S. at 561, 86 S.Ct. at 1057, 16 L.Ed.2d at 97. (Emphasis added.)

In Kent, *supra,* the United States Supreme Court sets forth certain determinative factors which should be considered by the judge in deciding whether or not to waive jurisdiction. Among these are "(1) [t]he seriousness of the alleged offense to the community and whether the protection of the community requires waiver; (2) [w]hether the alleged offense was committed in an aggressive, violent, premeditated

or willful manner; * * * (6) [t]he sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living; (7) [t]he record and previous history of the juvenile, including previous contacts with * * * other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation * * * or prior commitments to juvenile institutions; and (8) [t]he prospects for adequate protection of the public and *the likelihood of reasonable rehabilitation of the juvenile * * * by the use of procedures, services and facilities currently available to the Juvenile Court.*" 383 U.S. at 566–567, 86 S.Ct. at 1059–1060, 16 L.Ed.2d at 100–101 (Appendix to opinion of the Court) (Emphasis added.)

■ There is nothing except the conclusion of the Superior Court that the "best interest" of the juvenile and "the best interest of the State of Arizona can be served by the said juvenile to be hereinafter remanded to adult court for prosecution as an adult." There is no finding that the child is or is not amenable to treatment or rehabilitation through available facilities, either within or without the State of Arizona, nor that the safety or interest of the public requires that the child be transferred for criminal prosecution.

That the crime was grievous, is not to be questioned in view of the evidence. The only testimony whether there was an institution available for rehabilitation is found in the testimony of John Tovrea who testified that he knew of no such facility *in the State of Arizona.*

From the date of the apprehension (August 16th) to the date of hearing (August 31st) there was ample time for an investigation, including the record of the juvenile in the court from which he was sent to Fort Grant. There was ample time for consideration of any institutions or facilities for the purpose of intensive care as suggested by Tovrea. There was ample time for mental examination before the hearing, to be made by a public or private agency, or by a person qualified to make such examination. These are requirements under Rules of Procedure for the Juvenile Court, effective April 15, 1970. It is apparent that the Judge of the Juvenile Court overlooked the Juvenile Court Rules promulgated more than a year earlier, but he certainly should have been familiar with, and have followed the criteria as established in *Kent, supra.*

The juvenile may be guilty of the offense charged, but for the reasons heretofore stated he is entitled to a fair hearing with the observation of due process.

In view of the fact that only a year and a half have elapsed since the waiver of jurisdiction, it is ordered remanding the case to the Superior Court of Graham County with directions that it proceed with a transfer hearing in accordance with the views expressed in this opinion.

HAYS, C. J., CAMERON, V. C. J., and DONOFRIO and EUBANK, Court of Appeals, Judges, concur.

Note: STRUCKMEYER and HOLOHAN, JJ., did not participate in the determination of this matter; Judges FRANCIS J. DONOFRIO and WILLIAM E. EUBANK of the Court of Appeals, Division One were called in to sit in their stead and participate in the determination of this matter.