The PEOPLE of the State of South Dakota in the Interest of L. V. A., a child.

No. 11938.

Supreme Court of South Dakota.

Dec. 16, 1976.

Rehearing Denied Jan. 19, 1977.

Gary R. Richards, Spearfish, for appellant.

Harry W. Christianson, Asst. Atty. Gen., Pierre, for respondent State of South Dakota; William J. Janklow, Atty. Gen., Pierre, on the brief.

ZASTROW, Justice.

This case is before us on an intermediate appeal from a transfer certificate of the Circuit Court of the Eighth Judicial Circuit

for Butte County. By its transfer certificate, the circuit court transferred L.V.A., a juvenile, to adult court for criminal proceedings upon two counts of attempted murder and conspiracy to commit murder.

At the transfer hearing and in this appeal the juvenile raises the following questions:

(1) Is SDCL 26–11–4 unconstitutional for vagueness;

(2) Was there sufficient evidence to justify transfer;

(3) Does jeopardy attach at a juvenile transfer hearing;

(4) Does a right of appeal exist from a transfer order; and

(5) Was a photograph of the scene erroneously admitted.

In the early morning hours of February 26, 1976, police officers Herb Lurz and Dan Rogers of Belle Fourche, South Dakota, received a radio call reporting gun shots near Eighth and State Streets in Belle Fourche. The officers responded to the call. Near the intersection of Eighth and State Streets several shots were fired at the police vehicle, breaking the red light and windshield. The police officers saw no one in the vicinity and they could not determine the direction from which the shots came.

Between 12:30 and 1:00 a. m., the juvenile and two male companions had left a teenage party in Belle Fourche, the juvenile and one of his companions each carrying a .22 caliber rifle. Later, they returned to the party, breathing hard, still in the possession of the rifles, and explaining that they "had fired their rifles downtown."

A petition alleging the delinquency of the juveniles was filed February 27, 1976, by the Butte County State's Attorney. The act of delinquency was alleged to be the shooting at the officers with the intent to kill. After the juvenile was released on bond, the attorney general filed a "Petition and Request for Transfer Hearing" on March 17, 1976, alleging attempted murder and conspiracy.

A transfer hearing was held on March 23, 1976, at which time the above facts were established. In addition, a court service worker testified about his investigation of the juvenile and offered his opinion that the likelihood of reasonable rehabilitation of the juvenile was limited.

Following the transfer hearing the court entered findings of fact and reasons for transfer in addition to a certificate transferring the juvenile to adult court.

## CONSTITUTIONALITY

The juvenile's first contention is that SDCL 26–11–4[1] is unconstitutionally vague and violative of the due process clauses of the Fourteenth Amendment of the United States Constitution and Art. VI, § 2, of the South Dakota Constitution.

The juvenile asserts that the statute fails to provide adequate criteria or standards to guide the juvenile court in determining whether to transfer a juvenile to adult

1. SDCL 26–11–4 provides: "The circuit court may, in its discretion, in any case of a delinquent child, after transfer hearing, permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of municipal ordinances. In such cases the petition filed under chapter 26–8 shall be dismissed. The hearing shall be conducted as hereinafter provided.

"At the transfer hearing, the court shall consider only whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child.

"Written reports and other materials relating to the child's mental, physical, and social history may be considered by the court, provided that the person or persons who prepared the report and other material shall appear and be subject to both direct and cross-examination.

"If the court finds that a child should be held for criminal proceedings or proceeded against for violation of municipal ordinance in a court of competent jurisdiction, the court shall enter an order certifying to that effect. When an order of certification has been made, the jurisdiction of the juvenile court as to the child concerned is terminated, except that the court to which the proceedings are transferred may require the juvenile court to hold the child in detention pending proceedings in that court.

"If the court finds that it is in the best interest of the child and of the public for the court to retain jurisdiction, it shall proceed with the adjudicatory hearing."

court. The juvenile relies solely upon *People v. Fields,* 1972, 388 Mich. 66, 199 N.W.2d 217, in which a similar Michigan statute was held to have been unconstitutionally vague.[2]

■ The "vagueness" argument rests upon either the theory that there has been a delegation of legislative authority with standards inadequate to prevent arbitrary or discriminatory administrative actions, or that the statute is so vague that a person cannot reasonably know what conduct the law expects from him. Neither of these theories has any application to SDCL 26–11–4. In a transfer hearing the circuit court is acting in its capacity as the juvenile court and not as an administrative agency. SDCL 26–7–1. Neither does the statute attempt to define any criminal conduct; instead, it establishes the judiciary's function in determining the legal proceedings to be used in the processing of a juvenile for certain violations of the laws of the state.[3]

Furthermore, when considered with the intent of SDCL, Chapters 26–7—26–8 and 26–11 (i. e., to protect juveniles from the punitive provisions of the criminal law and provide for rehabilitation rather than punishment), the statute provides a sufficient standard to prevent the exercise of the juvenile court's discretion in an arbitrary, capricious or discriminatory manner.[4]

■ However, because a transfer hearing is a " 'critically important' action determining vitally important statutory rights of the juvenile," it is subject to the "constitutional principles [of] due process and the assistance of counsel." *Kent v. United States,* 1966, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. Those due process requirements are required by South Dakota statutes as well as by *Kent.*

■ Before transfer, the juvenile is entitled to a hearing, and notice of the time, place, and purpose of the hearing must be given to the juvenile, his parents, guardian or other custodian and their attorneys. *Kent v. United States,* supra; SDCL 26–8–11, 26–8–12, 26–8–13, 26–8–13.1; SDCL 26–8–22.1 and SDCL 26–11–4. The petition for

---

**2.** On rehearing, *People v. Fields,* 1974, 391 Mich. 206, 216 N.W.2d 51. The continuing authority of these cases is questionable in view of the recent Michigan Supreme Court ruling in *People v. Peters,* 1976, 397 Mich. 360, 244 N.W.2d 898, that "we express our disagreement with the holding of the majority opinion in *Fields* on rehearing, and our agreement with the reasoning of dissenting Justice Levin * * *," and "[t]o the extent that *People v. Fields, supra,* is not supportive of our decision today, it is overruled." 244 N.W.2d at 901–902.

**3.** Some violations do not require a transfer hearing at all, for example, SDCL 26–8–7 and SDCL 26–11–1 expressly exclude "state or municipal hunting, fishing, boating or traffic laws cognizable by a magistrate," and, effective April 1, 1977, "petty offense(s)" from the jurisdiction of the juvenile court. Furthermore, in some jurisdictions the prosecuting attorney, not the judiciary, is allowed to choose the proceedings, adult or juvenile, in which a juvenile will be prosecuted, i. e., Ill.Rev.Stat., Ch. 37, § 702–7(3) (1967) (subsequently amended), interpreted in *United States ex rel. Bombacino v. Bensinger,* 7 Cir., 1974, 498 F.2d 875; Neb. R.S. 43–202 (subsequently amended) interpreted in *State v. Grayer,* 1974, 191 Neb. 523, 215 N.W.2d 859; 18 U.S.C.A. 5032 (subsequently amended) interpreted in *Cox v. United States,* 4 Cir., 1973, 473 F.2d 334, cert. den. 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116.

**4.** *People v. Peters,* 1976, 397 Mich. 360, 244 N.W.2d 898; *State v. Speck,* Iowa 1976, 242 N.W.2d 287; *In re Welfare of Burtts,* 1975, 12 Wash.App. 564, 530 P.2d 709; *Clemons v. State,* Ind.App.1974, 317 N.E.2d 859, cert. den. 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86; *Davis v. State,* Fla.App.1974, 297 So.2d 289; *In re Bullard,* 1974, 22 N.C.App. 245, 206 S.E.2d 305; *In re Juvenile,* 1974, 364 Mass. 531, 306 N.E.2d 822; *State In Interest of Salas,* Utah 1974, 520 P.2d 874; *State v. Lemon,* 1974, 110 Ariz. 568, 521 P.2d 1000; *In re F.R.W.,* 1973, 61 Wis.2d 193, 212 N.W.2d 130, cert. den. 416 U.S. 974, 94 S.Ct. 2000, 40 L.Ed.2d 563; *Lujan v. District Court of Fourth Judicial District,* 1973, 161 Mont. 287, 505 P.2d 896; *Sherfield v. State,* Okl.Cr.1973, 511 P.2d 598; *State v. Scoville,* 1973, 113 N.H. 161, 304 A.2d 366; *State v. Jimenez,* 1972, 84 N.M. 335, 503 P.2d 315; *In re Weidner,* 1971, 6 Or.App. 317, 487 P.2d 1385; *State v. Williams,* Mo.1971, 473 S.W.2d 382; *Lewis v. State,* 1970, 86 Nev. 889, 478 P.2d 168; *In re Correia,* 1968, 104 R.I. 251, 243 A.2d 759; *State ex rel. Londerholm v. Owens,* 1966, 197 Kan. 212, 416 P.2d 259; *United States v. Caviness,* D.C.D.C.1965, 239 F.Supp. 545; *People v. Shipp,* 1963, 59 Cal.2d 845, 31 Cal.Rptr. 457, 382 P.2d 577.

transfer served six days in advance provided adequate notice of the nature and purpose of the hearing. Although the record does not show notice of the time and place of the hearing, all parties were present and no objection has been made that adequate notice was not given.

■ The juvenile is entitled to the effective assistance of counsel, and, if he is without sufficient financial means, counsel must be appointed by the court. *Kent v. United States,* supra; SDCL 26–8–13.1; SDCL 26–8–22.1 and 26–8–22.2. Prior to the hearing, the juvenile's parents had retained Mr. Richards. However, at the transfer hearing the juvenile requested that he be provided with appointed counsel, and Mr. Richards was appointed. The record reflects that he was adequately prepared and provided effective representation at the transfer hearing.

■ Counsel for the juvenile must be given access to and a meaningful opportunity to review the court records and social reports submitted, reviewed, or admitted as evidence, so that they may "be subjected * * * to examination, criticism, refutation." *Kent v. United States,* 383 U.S. at 563, 86 S.Ct. at 1058; see also SDCL 26–8–30; SDCL 26–11–4. Only the investigative report of the court service worker was reviewed and received as evidence, and it had been furnished to counsel prior to the hearing.

■ It is incumbent upon the juvenile court, in addition to the order of certification as required by SDCL 26–11–4, to accompany it "with a statement of the reasons or considerations therefor. * * * [T]he statement should be sufficient to demonstrate * * * that the question has received the careful consideration of the

Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Kent v. United States,* 383 U.S. at 561, 86 S.Ct. at 1057. Here, the court set forth in a six-page "Statement of Facts and Reasons for Transfer" a summary of the evidence presented, the criteria used in making a determination to transfer,[5] and the reasons for transfer under those criteria. The "Statement of Facts and Reasons for Transfer" provided an adequate basis for review by this court.

■ We find the standard of SDCL 26–11–4 to be adequate to meet any attack that it is unconstitutionally vague, that the statutes heretofore cited are applicable to transfer hearings, and that the procedures used at the hearing satisfy the due process requirements.

## SUFFICIENCY OF THE EVIDENCE

■ Although we find SDCL 26–11–4 contains a standard sufficient to meet the constitutional challenges, the discretion of the juvenile court to transfer may not be exercised arbitrarily. To assist the juvenile courts, the United States Supreme Court and many other courts have approved or adopted standards for the transfer of a juvenile to adult court.[6]

An examination of these standards reveals two basic areas of consideration: (1) the circumstances of the crime, and (2) the amenability of the juvenile to treatment within the juvenile system. Because of the separability of the evidence involved, we suggest that the transfer hearing consider the problems of transfer in two phases.

■ In the first phase, the court should consider evidence of the circumstances sur-

---

5. The juvenile court used the eight criteria contained in the appendix to the *Kent* decision.

6. *Kent v. United States,* 1966, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *In re Welfare of Hernandez,* 1976, 15 Wash.App. 205, 548 P.2d 340; *In re Welfare of Burtts,* 1975, 12 Wash. App. 564, 530 P.2d 709; *In re Harbert,* 1975, 85 Wash.2d 719, 538 P.2d 1212; *State v. Kemper,* Mo.App.1975, 535 S.W.2d 241; *In re Juvenile,* 1974, 364 Mass. 531, 306 N.E.2d 822; *Sherfield*

*v. State,* Okl.Cr.1973, 511 P.2d 598; *State v. Hogan,* 1973, 297 Minn. 430, 212 N.W.2d 664; *State v. Yard,* 1973, 109 Ariz. 198, 507 P.2d 123; *Mikulovsky v. State,* 1972, 54 Wis.2d 699, 196 N.W.2d 748; *State v. Gibbs,* 1972, 94 Idaho 908, 500 P.2d 209; *Knott v. Langlois,* 1967, 102 R.I. 517, 231 A.2d 767; *Summers v. State,* 1967, 248 Ind. 551, 230 N.E.2d 320; See Uniform Juvenile Court Act (U.L.A.) § 34.

rounding the alleged violation. Initially, there must be a determination that the factual evidence warrants further proceedings, that is:

(1) *Prosecutive merit.* The court must be presented with evidence which establishes that the public offense alleged in the petition has been committed and that there is probable cause to believe that the juvenile committed the offense.[7]

(2) *Seriousness of the alleged offense.* Although the seriousness of the offense alone does not warrant transfer, when considered with the other criteria, it may become the deciding factor in making a transfer.[8]

(3) *The manner or fashion in which the offense was committed.* Evidence that the offense was committed aggressively, violently, by use of a dangerous or deadly weapon, or with premeditation may be considered.

(4) *Subject of the alleged offense.* Greater weight may be given by the court to offenses against persons, particularly where personal injury has resulted.

(5) *Motivation for the commission of the alleged offense.* Evidence of an advance plan or scheme may be considered, as well as the apparent reasons for the commission of the alleged offense.

(6) *Ages and circumstances of other persons involved in the alleged offenses.* Although the existence of adult companions may be considered, the convenience of prosecuting several defendants at one trial should not be given undue weight.

 If there has been evidence presented establishing a public offense and probable cause to believe the juvenile committed the offense, the court should then hear evidence to determine whether the juvenile is amenable to the rehabilitative treatment available within the juvenile system. Factors which may be considered are:

(1) *Age of the juvenile.* The juvenile court should consider whether the remaining time of its jurisdiction will be sufficient to complete any rehabilitative program.

(2) *Physical and mental maturity.* The court should consider the juvenile's home life, school activities, emotional attitude, desire to be treated as an adult, pattern of living, apparent emancipation, and other relevant evidence of the juvenile's maturity.

(3) *Necessary treatment.* The court should take considerable care to determine what type of treatment or rehabilitative services are best for the juvenile.

(4) *Rehabilitative services available.* After determining what treatment the juvenile requires, the court should carefully examine the programs available for juveniles and adults to determine where the appropriate treatment can be given.

(5) *Previous history.* The court should consider previous convictions or adjudications of delinquency and the nature of the prior offenses, evidence of other antisocial behavior, prior contacts with law enforcement agencies not resulting in court proceedings, and the results of past rehabilitative efforts.

(6) *Threat to public safety.* The court may consider evidence which would show that confinement and security of the juvenile are necessary for the continuing protection of the public and whether the available juvenile facilities would provide sufficient security.

 These factors are not intended to be an exclusive list. With the exception

7. *In re Anonymous,* 1971, 14 Ariz.App. 466, 484 P.2d 235; *Green v. United States,* 1962, 113 U.S.App.D.C. 348, 308 F.2d 303; *Leach v. Superior Court for County of Los Angeles,* 1971, 21 Cal.App.3d 596, 98 Cal.Rptr. 687; *United States ex rel. Walker v. Maroney,* 1971, 3 Cir., 444 F.2d 47; *D.G.B. v. State,* Okl.Cr.1976, 549 P.2d 94; *Cartwright v. State,* Ind.App.1976, 344 N.E.2d 83; *Imel v. State,* Ind.App.1976, 342

N.E.2d 897; *In re Murphy,* 1972, 15 Md.App. 434, 291 A.2d 867; *In re J.F.,* 1976, 141 N.J.Super. 328, 358 A.2d 217; *Lujan v. District Court of Fourth Judicial District,* 1973, 161 Mont. 287, 505 P.2d 896.

8. *Cartwright v. State,* Ind.App.1976, 344 N.E.2d 83; *In re J.F.,* 1976, 141 N.J.Super. 328, 358 A.2d 217.

of prosecutive merit, all of the factors need not exist before a transfer may take place. However, in its statement of the reasons for transfer, the juvenile court should state the factors and the supporting evidence that are the basis of its decision to transfer. Any additional factors used by the court should be stated, as well as the supporting evidence, to allow for the "meaningful re-review" required by Kent.

On review, there must be substantial evidence in the record to support the juvenile court's finding that it would be contrary to the best interests of the child or of the public to retain jurisdiction over the child.[9]

In reviewing the findings of fact and reasons for transfer in this case, it appears that the juvenile court's decision to transfer was not based upon substantial evidence.

The juvenile court expressly declined to find that there was "probable cause" to believe that the juvenile committed the crime. The reluctance of the state to present evidence of the crime and the court's finding were apparent attempts to avoid any question of double jeopardy. *Breed v. Jones*, 1975, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346. We do not interpret *Breed v. Jones* as precluding a determination of probable cause. Because it is the court's function, and not the prosecuting attorney's, to determine the "prosecutive merit" of the allegations, there must be evidence presented sufficient to warrant a finding of "probable cause."

The evidence presented at this transfer hearing failed to show any evidence of a premeditated design to affect the death of a human necessary for the alleged offense of attempted murder.[10] There was no evidence of a conspiracy to commit murder and little, if any, evidence which connected the juvenile with the shooting.[11]

Finally, the evidence presented to show that the juvenile was not amenable to juvenile treatment came solely from the testimony of the court service worker. His investigation consisted of a brief interview with the juvenile, securing school records and preparing a written report to the court. Although the court allowed the court service worker to express his opinion on all of the criteria concerning the possibilities of rehabilitation for this juvenile, nowhere does it appear that he had sufficient information about the juvenile or of the rehabilitative alternatives to express those opinions.

Particularly illuminating was the court service worker's response to a question about the treatment and rehabilitative facilities necessary for this juvenile: "Well, I don't know if I could adequately answer that at the present time without doing a real thorough background of the boy."

A transfer to adult court is a critical stage in criminal proceedings. It deprives the juvenile of the protection and rehabilitation of the juvenile system and may subject him to lengthy incarceration with

**9.** *In re Harbert,* 1975, 85 Wash.2d 719, 538 P.2d 1212; *In re Patterson,* 1972, 210 Kan. 245, 499 P.2d 1131; *Calhoon v. State,* Okl.Cr.1976, 548 P.2d 1037; *State v. Gibbs,* 1972, 94 Idaho 908, 500 P.2d 209; *In re Stevenson,* Mont.1975, 538 P.2d 5; *L. v. Superior Court of Los Angeles County,* 1972, 7 Cal.3d 592, 102 Cal.Rptr. 850, 498 P.2d 1098; *Lewis v. State,* 1970, 86 Nev. 889, 478 P.2d 168.

**10.** The allegation of attempted murder was under SDCL 22–16–4, which provides: "Homicide is murder when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being," and not SDCL 22–16–7, which provides: "Homicide is murder when perpetrated by any act imminently dangerous to oth-

ers and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual."

**11.** A transfer hearing was held on the same day, before the same judge, for another juvenile charged with the same offenses. The findings of fact were made prior to the preparation of transcript and it appears that evidence in the prior hearing may have been inadvertently included in the findings in this matter. However, the fact that evidence of probable cause may have been presented in other proceedings does not relieve the state of its duty to present the evidence in the transfer hearing for this juvenile.

adults in prison. Therefore, the juvenile court must require a more substantial investigation and more evidence of the rehabilitative prospects than were submitted at this transfer hearing.[12]

## DOUBLE JEOPARDY

The juvenile has presented a rather paradoxial argument. Initially, he asserts that there must be sufficient evidence to show "probable cause" of the commission of the offense. Then he argues that if evidence of the offense is introduced, jeopardy attaches and he cannot be tried in adult court without a violation of the Fifth Amendment prohibition against double jeopardy.

The juvenile relies solely upon *Breed v. Jones,* supra; however, his interpretation of that case is inaccurate. In *Breed,* as provided by California law, the transfer hearing followed the adjudicatory hearing. The adjudication of delinquency was made upon proof beyond a reasonable doubt. *In re Winship,* 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. One of the possible dispositions available to the California Court was transfer to adult court. In such proceedings, the Supreme Court held that the juvenile had been placed in jeopardy by the adjudication of delinquency, and to require him to stand trial in criminal proceedings would have violated the Fifth Amendment.

*Breed* is inapplicable to the transfer hearing procedure under our statutes. SDCL 26–8–22.7 and SDCL 26–11–4 require that the transfer hearing be held before the adjudicatory hearing on the delinquency petition. The finding of probable cause at the transfer hearing does not require proof "beyond a reasonable doubt" as is required for an adjudication of delinquency. SDCL 26–8–22.5. The *Breed v. Jones* decision expressly approved of such procedure.

"We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding." Footnote 18, 421 U.S. at 538, 95 S.Ct. at 1790.

■ The finding of "prosecutive merit" at the transfer hearing is similar to a finding of "sufficient cause" in a preliminary hearing in adult court. SDCL 23–27–16. It cannot be seriously contended that jeopardy attaches at a preliminary hearing in adult proceedings, nor can it be contended that jeopardy attaches at a transfer hearing in juvenile court.

## RIGHT OF APPEAL

The juvenile also contends that an appeal from a transfer order is a matter of right under SDCL 15–26–1(2) and (4).[13] He instituted his appeal under those sections; however, this appeal was allowed as a discretionary appeal from an intermediate order under SDCL 15–26–1(6).

Although there are several court decisions which conclude that a transfer order is appealable as a matter of right,[14] it does

---

12. The evidence and investigation in this case are substantially less than that held to be insufficient in *State v. Gibbs, In re Stevenson,* and *In re Patterson,* supra, in note 9.

13. SDCL 15–26–1 provides: "Appeals to the Supreme Court from the circuit court may be taken as provided in this title from * * * (2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken * * * (4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment * * * (6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but

of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding."

14. *In re Welfare of I.Q.S.,* Minn.1976, 244 N.W.2d 30; *In re Doe,* 1974, 86 N.M. 37, 519 P.2d 133; *Aye v. State,* 1973, 17 Md.App. 32, 299 A.2d 513; *P. H. v. State,* Alaska, 1972, 504 P.2d 837; *Dillard v. State,* Tex.Civ.App.1969, 439 S.W.2d 460; *Graham v. Ridge,* 1971, 107 Ariz. 387, 489 P.2d 24; *In re Doe I,* 1968, 50 Haw. 537, 444 P.2d 459; *In re Houston,* 1968, 221 Tenn. 528, 428 S.W.2d 303; *Templeton v. State,* 1968, 202 Kan. 89, 447 P.2d 158; *State v.*

not appear that the "meaningful review" contemplated by *Kent v. United States*, supra, and *Breed v. Jones*, supra, mandates such a result. In fact, both *Kent* and *Breed* involved appeals following the conviction of the juvenile in adult criminal proceedings.

Prior to unification of the court system and the transfer of juvenile jurisdiction to the circuit courts, a transfer order from the then district county court would have been appealable to the circuit court under SDCL 26–8–58. *Runge v. State*, 1971, 86 S.D. 9, 190 N.W.2d 381. However, that statute was superseded by unification (see Ch. 130, S.L.1973, § 2 and Ch. 130, S.L.1973, § 14), and the legislature has not provided that transfer orders would be appealable as a matter of right.

■ Although a strong argument can be made for the need for granting the right to a direct appeal from a transfer order, we agree with those decisions which have denied such appeals as under statutes similar to ours.[15] The language in *People v. Jiles*, 1969, 43 Ill.2d 145, 251 N.E.2d 529 is appropriate:

"To permit interlocutory review of such an order would obviously delay the prosecution of any proceeding in either the juvenile or the criminal division, with the result that the prospect of a just disposition would be jeopardized. In either proceeding the primary issue is the ascertainment of the innocence or guilt of the person charged. To permit interlocutory review would subordinate that primary issue and defer its consideration while the question of the punishment appropriate for a suspect whose guilt has not yet been ascertained is being litigated in reviewing courts."

That the right of appeal is statutory has been so well established in South Dakota

that citations are unnecessary. It may well be that our legislature may find the considerations for allowing direct appeals persuasive enough to grant them by statute.

Until such time, it appears that this court can prevent arbitrary, capricious or discriminatory transfers by the use of discretionary intermediate appeals, as we have in this case. By doing so, the attendant delays which would occur for appeals from every juvenile transfer will be avoided.

## ADMISSIBILITY OF EVIDENCE

■ The juvenile further objects to the introduction of a photograph of the alleged crime scene. His only objection is that it had pen markings on it that were not placed on it by witnesses.[16] His objections are *without merit*. The markings were not prejudicial in any manner and their presence was adequately explained to the court.

The case is reversed and remanded for further proceedings consistent with this decision.

WINANS and COLER, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

DUNN, C. J., dissents.

WOLLMAN, Justice (concurring in part, dissenting in part).

I agree that SDCL 26–11–4 is not unconstitutionally vague; that jeopardy does not attach at a juvenile transfer hearing; that the court did not err in admitting the photograph of the scene; and that an appeal may not be taken from a transfer order as a matter of right. I do not agree, however, that the evidence is insufficient to justify transfer.

*Yoss*, 1967, 10 Ohio App.2d 47, 225 N.E.2d 275; *State v. Little*, 1965, 241 Or. 557, 407 P.2d 627, cert. den. 1966, 385 U.S. 902, 87 S.Ct. 208, 17 L.Ed.2d 133; *State v. Briggs*, 1966, 245 Or. 503, 420 P.2d 71.

**15.** *Brekke v. People*, 1965, 233 Cal.App.2d 196, 43 Cal.Rptr. 553; *People v. Jiles*, 1969, 43 Ill.2d 145, 251 N.E.2d 529; *In re T. J. H.*, Mo.1972,

479 S.W.2d 433; *Commonwealth v. Croft*, 1971, 445 Pa. 579, 285 A.2d 118; *State v. McArdle*, W.Va.1973, 194 S.E.2d 174.

**16.** The pen markings were an X and an O with the initials HL, which had been placed on the exhibit at the prior transfer hearing by the witness, Herb Lurz.

Granted that the state did not introduce a great quantity of evidence to establish probable cause linking appellant to the alleged violation, I believe that the evidence in the record does support a finding that the charge has prosecutive merit. One of the state's witnesses testified that appellant and two others took two rifles and left between 1:00 and 1:30 a. m. on the date of the alleged offense. Prior to leaving, appellant had loaded one of the rifles and said that he and the others were going to shoot around town. At about 2:15 a. m. that day, two police officers responded to a report that shots were being fired at an apartment house. Upon arriving at the scene in their patrol car, the officers were fired upon by unknown assailants. Five or six bullets either passed through or hit the police car. One of the officers testified that he felt something pass his head two or three times and then felt something hit his head. The other officer was struck by flying lead. Spent cartridges were later found at a point some 25 to 45 feet from where the squad car was when it was fired upon. When appellant returned to the house from which he had left with the rifle, he was carrying a .22 rifle and " * * * was breathing hard like he had been running." Although the state's witness was unable to pinpoint the time at which appellant returned with the rifle, the inference I draw is that it was somewhere during the early morning hours. Taken as a whole, this evidence is sufficient to establish the prosecutive merit of the charge against appellant.

After weighing the evidence against the factors which should be considered by the trial court in determining whether a juvenile is amenable to the rehabilitative treatment available within the juvenile system, I am satisfied that the trial court did not err in transferring appellant. Appellant was 17 years and 2 months of age on the date of the alleged offense; he had dropped out of school in December of 1975 to seek employment after he had gotten his girl friend pregnant. Appellant's school record is bad. In August of 1974 he was charged with driving while intoxicated and with having no valid drivers permit; he admitted the truth of the allegations and was placed on probation. Granted that the court service worker's investigation was not as comprehensive and thorough as it might have been, this should not be a reason for reversing the transfer order if we can conclude, as I think we can here, that the trial court had sufficient information from which it could determine that it would be contrary to the best interests of appellant or of the public to retain jurisdiction over appellant. If by substantial evidence we mean " * * * such relevant and competent evidence as a reasonable mind might accept as being sufficiently adequate to support a conclusion * * *," SDCL 1–26–1(8), then I am satisfied that the transfer order was not erroneously entered.

DUNN, Chief Justice (dissenting).

I would agree that the transfer statute is not constitutionally vague. I would also agree that an appeal from a transfer hearing should not be a matter of right. However, the transfer should be within the discretion of the trial judge after considering (1) the circumstances of the crime, and (2) the amenability of the juvenile to treatment within the juvenile system. I would not tie a trial judge down with twelve different factors that he has to consider in each transfer case. It is too cumbersome, too "error prone," and does not leave much to the court's discretion. Further, I would hold that the hearing and the findings in this case are sufficient to satisfy any reasonable standards for a transfer hearing.

I would affirm.