No. 12956

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

IN THE MATTER OF RODNEY DEAN STEVENSON,
a child under eighteen years of age.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

John M. McCarvel argued, Great Falls, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
Thomas Budewitz, Assistant Attorney General, argued,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Norman L. Newhall, III, argued, Deputy County Attorney,
Great Falls, Montana

---

Submitted: May 8, 1975

Decided: JUN 17 1975

Filed JUN 17 1975

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

On the evening of November 9, 1974, Albert Rusch, proprietor of the Rainbow Grocery in Great Falls, Montana, was severely wounded by a shotgun blast during an attempted armed robbery. Three days later the Great Falls city police were informed by a number of individuals that they had some information to divulge about the crime.

On November 13, 14, and 18, sworn statements were taken from five minors and two adults by the deputy county attorney for Cascade County. Through the use of those statements, Kenneth Kreuger and Rodney Stevenson, both minors, were implicated in the crime.

On November 15, 1974, a petition was filed in the youth court for the purpose of declaring Rodney Stevenson a delinquent youth, pursuant to section 10-1203(12)(a), R.C.M. 1947. The substance of the petition alleged that Stevenson had committed or was legally accountable for the following crimes within the meaning of section 94-2-107(3), R.C.M. 1947:

1) Attempt -------section 94-4-103, R.C.M. 1947.

2) Robbery--------section 94-5-401(1)(a), R.C.M. 1947.

3) Aggravated Assault-----section 94-5-202(1)(a), R.C.M. 1947.

A motion requesting transfer of Stevenson from youth court to adult criminal court pursuant to section 10-1229(1), R.C.M. 1947, accompanied the petition.

On November 21, 1974, a hearing on the transfer motion was held and evidence heard. Four days later the youth court relinquished its jurisdiction and transferred the case to the district court where Stevenson was to be prosecuted as an adult.

On appeal the principal issue is whether the youth court judge abused his discretion in ordering Stevenson transferred from youth court to adult criminal court pursuant to section 10-1229. We hold the youth court judge abused his discretion in failing to consider all of the criteria established by statute as a prerequisite to a valid transfer order. We remand the cause to the youth court so that all criteria may be properly considered.

For a complete understanding of this case, we will review the evidence presented at the transfer hearing.

During the hearing, the sworn statements of the five minors and two adults, previously referred to, were introduced into evidence. The contents of those statements were summarized by Norman Newhall III, the deputy county attorney for Cascade County:

> "MR. NEWHALL: Now, then, these statements essentially corroborate the same version of what occurred here, including, in particular, statements by Rodney Stevenson to his date of that evening, and his apparent girl friend for sometime, a girl by the name of Susan Ukrainetz, that the boys, Kenneth Kreuger and Rod Stevenson, were that evening together, and they went in Kenneth Kreuger's truck, at approximately 7:30 P.M., and they proceeded, by what route I don't know, they eventually proceeded to the Rainbow Grocery. It is unclear from the statements whether there was any casing of the premises by the boys before the actual incident, but essentially what occurred was that Rod Stevenson stayed in the truck, as the driver * * *."

Later in the transcript, Mr. Newhall continued:

> "MR. NEWHALL: In any event Kenneth Kreuger went into the store, the Rainbow Grocery, and he had the shotgun, and the shotgun was fired, and the charge struck Mr. Rusch, two shots, in the back, and then Kenneth ran out of the store, and jumped into the truck, which was being driven by Rod Stevenson, and they proceeded then to the home of Anita Jermolajevs, where they spent most of the rest of that evening, and disbanded sometime around midnight. Before that time, Rod Stevenson had gone out driving with Sue Ukrainetz, at which time he told her of this incident. That, essentially, is the bare bones of which is contained in those statements. Now, then, other aspects of all of the statements indicate that Rod Stevenson and Kenneth Kreuger had gone out and shot this shotgun on at least one other occasion prior to this incident, oh, apparently hunting, or whatever they were doing,

and the statements also indicate that Rod Stevenson was aware that Kenneth went into the store with the shotgun, and he was aware, after the incident, that a person had been shot, because Kenneth had told him. That will be the summary I have of these statements."

Here, for the first time, Stevenson contends the court erred in receiving these statements into evidence because they were hearsay and, furthermore, their receipt into evidence violated certain basic legal rights granted to minors by section 10-1218, R.C.M. 1947.

We decline to rule upon this question, absent a proper and timely objection by defense counsel at the hearing. This Court will not consider objections urged for the first time on appeal. State v. Whitcomb, 94 Mont. 415, 22 P.2d 823; Boehler v. Sanders, 146 Mont. 158, 404 P.2d 885; Carpenter v. Free, 138 Mont. 552, 357 P.2d 882; Bower v. Tebbs, 132 Mont. 146, 314 P.2d 731.

At the hearing Jack Macek, a detective with the Great Falls police department, testified as to the circumstances surrounding the crime and the subsequent investigation which led to the apprehension of Kreuger and Stevenson.

D. W. Avery, Jr., chief youth probation officer for Cascade County, testified as to Stevenson's prior record, which revealed:

1. Stevenson had stolen gasoline on two previous occasions.

2. Stevenson had been involved in a "high speed chase" with the Great Falls city police while driving a vehicle on Central Avenue. The police report stated that he was drunk at the time he was apprehended. As a result of this incident, Stevenson was referred to the juvenile department where he was placed on an eight week probation and his driving privileges were suspended for sixty days.

- 4 -

3. Stevenson was involved in a vaguely described "fighting incident" the facts of which were not ascertained by the juvenile department. During the hearing Stevenson's mother attempted to explain that this incident had occurred when he was attacked by another minor and badly beaten.

4. Stevenson was involved in the attempted theft of a garden hose. The juvenile department considered this matter to be so trivial that no disposition was made.

Avery also testified that Stevenson had dropped out of school on November 30, 1973, and had not attended school since that time.

The statute which pertains to the relinquishment of jurisdiction from youth court to adult criminal court is section 10-1229, R.C.M. 1947, which states in pertinent part:

"(1) After a petition has been filed alleging delinquency the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of prosecution to the district court if:

"(a) the youth charged was sixteen (16) years of age or more at the time of the conduct alleged to be unlawful and the unlawful act is one or more of the following:

"* * *

"(iii) aggravated assault as defined in section 94-5-202, R.C.M. 1947;

"(iv) robbery as defined in section 94-5-401, R.C.M. 1947;

"* * *

"(b) a hearing on whether the transfer should be made is held in conformity with the rules on a hearing on a petition alleging delinquency, except that the hearing will be to the youth court without a jury; and

"(c) notice in writing of the time, place and purpose of the hearing is given to the youth, his counsel, and his parents, guardian or custodian at least ten (10) days before the hearing * * *.

"* * *

"(3) Upon transfer to district court, the judge shall make written findings of the reasons why the jurisdiction of the court was waived and the case transferred to district court."

Section 10-1229 was enacted in 1974 as part of a comprehensive new act called the "Montana Youth Court Act", sections 10-1201 through 10-1252, R.C.M. 1947. This Act established the rights of minors and brought Montana's youth court procedures up to date with relatively recent decisions of the United States Supreme Court. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L ed 2d 527; Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L ed 2d 84; In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L ed 2d 368. The predecessor statute to section 10-1229 was section 10-603(c), R.C.M. 1947, as amended, which read in pertinent part:

> "(c) When the juvenile court has jurisdiction of any child sixteen (16) years of age, or over, who is accused of committing or the attempt to commit murder, manslaughter * * * then the county attorney may request the juvenile court to be permitted to file an information against the juvenile in district court, or, when the facts warrant, the juvenile judge may order the county attorney to proceed against the juvenile in district court on an information.
>
> "Before making such order the juvenile judge must hear the matter by an informal preliminary hearing to determine first, if there is probable cause to believe the juvenile has committed the felony, and, second, to determine whether under the circumstances it appears necessary for the best interest of the state that the juvenile be held to answer the information in district court.* * *"

In Lujan v. District Court, 161 Mont. 287, 296, 505 P. 2d 896, this Court reviewed section 10-603 and established the following criteria to guide the district court judge in the exercise of his discretion:

> "* * * We further hold that in the exercise of his discretion in juvenile transfer proceedings under the present Montana Juvenile Court Act, the judge of the juvenile court is entitled to consider the nature and enormity of the alleged crime, the serious personal injuries inflicted on the victim, and the absence of provocation as the controlling determinants in ordering waiver and transfer to adult criminal court for prosecution. " (Emphasis supplied).

An examination of section 10-1229 of Montana's recently enacted Youth Court Act compels the conclusion that the criteria established in Lujan are no longer the "controlling determinants" in the consideration of whether the youth court should waive juris-

diction. Instead the applicable criteria are stated in section 10-1229:

> "(d) the court finds upon the hearing of all relevant evidence that there are reasonable grounds to believe that:
>
> "(i) the youth committed the delinquent act alleged; and
>
> "(ii) the seriousness of the offense and the protection of the community requires treatment of the youth beyond that afforded by juvenile facilities; and
>
> "(iii) the alleged offense was committed in an aggressive, violent, or premeditated manner.
>
> "(2) In transferring the matter of prosecution to the district court the court shall also consider the following factors:
>
> "(a) the sophistication and maturity of the youth, determined by consideration of his home, environmental situation, and emotional attitude and pattern of living;
>
> "(b) the record and previous history of the youth, including previous contacts with the youth court, law enforcement agencies, youth courts in other jurisdictions, prior periods of probation and prior commitments to juvenile institutions;
>
> "(c) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the youth by the use of procedures, services and facilities currently available to the youth court."

Summarizing all the evidence presented at the transfer hearing we note that there was evidence (1) which tended to establish reasonable grounds to believe that Stevenson had committed the acts alleged; (2) that the offense was committed in an aggressive, violent or premeditated manner; and, (3) there was evidence regarding his prior school and offense record. However, this is not enough. The Montana Youth Court Act requires more before the youth court is authorized to relinquish its jurisdiction to the adult criminal court./ Too, juvenile transfer hearings are not adjudicatory hearings within the meaning of constitutional requirements. Allen F. Breed, Etc., Petitioner v. Gary Steven Jones, _____U.S._____, _____S.Ct._____, _____L ed 2d _____, No. 73-1995, May 27, 1975.

Here, the evidence presented at the transfer hearing was insufficient to waive jurisdiction because there was no showing that "the seriousness of the offense and the protection of the community requires treatment of the youth beyond that afforded by juvenile facilities" as required by section 10-1229(1)(d)(ii). The state argues the very nature of the offenses demonstrates the need for treatment of the youth beyond available juvenile facilities. We cannot agree. To assume that juvenile facilities are inadequate from the mere fact that the youth is charged with a serious offense, completely ignores the rehabilitative purpose of the Act as set forth in section 10-1202, and is tantamount to a judicial admission the juvenile facilities in Montana are inadequate to cope with the hard core youth offender. We will not do this.

The transfer hearing was further defective because the youth court failed to consider the "sophistication and maturity of the youth, determined by consideration of his home, environmental situation, and emotional attitude and pattern of living" as mandated by section 10-1229(2)(a).

During the hearing, Mr. Avery touched on this matter briefly:

> "MR. AVERY: Well, all we know, your honor, is while he was on probation to our office, and at that time he was living in the home, and I did talk to his father, along with Mr. Schwanke, who was originally his attorney, last Friday, in my office, where I was going to try to get some family history in this case, and so on, and at that time Mr. Stevenson told me that the boy had been living at home, so that's all I have to go on, and our office has no other knowledge than that." (Emphasis supplied).

This cursory examination is insufficient to properly consider a factor mandated by statute.

Finally, there was no inquiry into the important question of whether Stevenson could be rehabilitated within the present structure of the youth system. As a related matter, there was no inquiry into the availability of facilities, programs and personnel

- 8 -

under the youth court system and whether he would be amenable to these. Yet, a judicial consideration of this factor is required by section 10-1229(2)(c).

In State v. Gibbs, 94 Idaho 908, 500 P.2d 209, the Supreme Court of Idaho reversed the waiver of juvenile court jurisdiction in a case where a seventeen year old youth was charged with two separate acts of burglary with intent to commit larceny. After establishing specific criteria for the waiver of juvenile court jurisdiction, the court held the lower court had erred when it failed to make a specific finding, supported by substantial evidence, that the juvenile was not amenable to the rehabilitative programs existing under the juvenile court system. For other decisions stressing the importance of considering a juvenile's amenability to the juvenile court system as a factor in deciding whether juvenile court jurisdiction should be waived see: In re Patterson, 210 Kan. 245, 499 P.2d 1131; State v. Yard, 109 Ariz. 198, 507 P.2d 123; P.H. v. State, (Alaska 1972), 504 P.2d 837; In re Johnson, 17 Md. App. 705, 304 A.2d 859; H. v. Superior Court of Los Angeles County, 91 Cal. Rptr. 600, 478 P.2d 32.

Montana's Youth Court Act does not require that the youth court make a specific finding that the youth is not amenable to the rehabilitative programs currently existing under the system as a condition precedent to a valid waiver of jurisdiction. However, it does require the judge to carefully consider this factor along with all other factors set out by statute.

The transfer hearing is a critically important phase in youth proceedings. Black v. United States, 355 F.2d 104 (D.C. Cir. 1965); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L ed 2d 84. Its importance is highlighted by F. Thomas Schornhorst in his article entitled "The Waiver of Juvenile Court Jurisdiction: Kent Revisited", 43 Ind. Law Journal 583, 586:

"* * * There is convincing evidence that most
juvenile court personnel, and the judges them-
selves, regard the waiver of jurisdiction as the
most severe sanction that may be imposed by the
juvenile court.  Not only is the juvenile exposed
to the probability of severe punishment, but the
confidentiality and individuality of the juvenile
proceeding is replaced by the publicity and norma-
tive concepts of penal law; the child acquires a
public arrest record which, even if he is acquitted,
will inhibit his rehabilitation because of the
opprobrium attached thereto by prospective employers
* * *."

The importance of a transfer hearing demands that the
youth court carefully consider all factors set forth in section
10-1229.  Evidence relevant to each factor should be preserved in
the transcript in order to permit meaningful appellate review.
After the presentation of all evidence, written findings giving
reasons why the jurisdiction of the court was waived must be
made pursuant to section 10-1229(3).  It is not necessary that
all factors be resolved against the youth in order to justify the
waiver, nor is it necessary that the youth  court make an arith-
metical type calculation as to the weight it assigns each factor.
However, all factors set forth by statute must be carefully con-
sidered and a very deliberate evaluation of each individual case
must be effectuated prior to the entry of a waiver order.

This cause is remanded to the youth court of Cascade County
for further proceedings consistent with this Opinion.

_____
                    Justice

We Concur:

_____
    Chief Justice

_____

_____

_____
    Justices.