No. 81-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

IN THE MATTER OF
N. C. F., a Youth.

_____

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Olsen, Christensen & Gannett; Robert J. Waller,
Billings, Montana

For Respondent:

Harold Hanser, County Attorney, Billings,
Montana

_____

Submitted on Briefs: February 25, 1982

Decided: April 8, 1982

Filed: **APR 8 - 1982**

_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The State filed a motion on September 9, 1981, requesting the Youth Court to waive its jurisdiction over N.C.F., a youth, and to transfer jurisdiction to the District Court. Pursuant to section 41-5-206(1)(b), MCA, a hearing on the petition was held September 21 and 22, 1981, before the Youth Court Division of the Thirteenth Judicial District Court. That court issued an order on September 29, 1981, granting the State's petition. The youth now appeals that order.

Michelle Ross was shot in the face with a 20 gauge sawed-off shotgun at approximately 8:00 P.M., September 8, 1981. The shooting occurred in front of a structure in Billings, Montana, where N.C.F., Robert Peterson and Michelle's boyfriend, George Irish, resided. N.C.F., Robert, Todd Heiser and Michelle's sister, Niki Ross, were present at the time of the shooting.

Todd testified at the hearing that upon Michelle and Niki's arrival, Robert proceeded to the road to talk to Michelle while N.C.F. entered the structure. N.C.F. returned outside immediately with a sawed-off shotgun and loaded the gun in front of Todd. N.C.F. then walked toward Michelle. Todd heard a gun shot and saw Michelle fall. Todd then fled the scene.

Niki Ross corroborated Todd's story at the hearing. She indicated that while her sister was talking to Robert, N.C.F. approached them carrying a sawed-off shotgun, the gun was fired and Michelle fell to the ground.

Robert Peterson reported to police essentially the same set of events on September 9, 1981. However, at the

hearing, he testified to seeing N.C.F. stumble and start to fall to the ground immediately prior to the gun having been discharged. All three of these individuals also testified to having seen N.C.F. point a gun at themselves and others, occasionally dry-fire a gun while it was pointed at an individual and misuse other weapons.

The 20 gauge sawed-off shotgun was found by a neighbor in the loft of her garage two days after the shooting. A print from N.C.F.'s left hand was found on the barrel of the gun. Both Robert and Niki reported that N.C.F. was holding the barrel of the shotgun in his left hand at the time of the incident.

N.C.F. was arrested the night of the shooting and a petition was filed September 9, 1981, charging him with attempted deliberate homicide. Following Michelle's death, an amended petition was filed September 19, 1981, charging N.C.F. with deliberate homicide. The hearing on the State's petition for transfer took place on September 21 and 22, 1981.

Section 41-5-206, MCA, contains the criteria to be used at Youth Court hearings to determine whether or not to transfer jurisdiction over a youth to the District Court. The issue before us is whether the Youth Court abused its discretion by failing to adequately consider whether or not the Youth Court's facilities, services and procedures would serve the needs of N.C.F. and the community. The relevant Youth Court Act section is:

> "41-5-206. Transfer to criminal court. (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the peti- tion on its merits, transfer the matter of prosecution to the district court if:
>
> " . . .

-3-

"(d)   the court finds upon the hearing of all
relevant evidence that there are reasonable
grounds to believe that:

". . .

"(ii)   the seriousness of the offense and the
protection of the community require treatment
of the youth beyond that afforded by juvenile
facilities.

". . .

"(2)   In transferring the matter of prosecu-
tion to the district court, the court shall
also consider the following factors:

". . .

"(d)   the prospects for adequate protection
of the public and the likelihood of reason-
able rehabilitation of the youth by the use
of procedures, services and facilities cur-
rently available to the youth court."

Part 2 of this section was changed effective October 1,

1981, to state that the court _may_ consider the following

factors, rather than that it _shall_ consider those factors.

However, the statute containing the word "shall" was in

effect at the time of the instant transfer hearing.   Therefore,

that statute and this Court's interpretation of that statute

in In re Stevenson (1975), 167 Mont. 220, 538 P.2d 5, are

relevant.   In _Stevenson_, we stated on pages 229 and 230:

"Montana's Youth Court Act does not require
that the youth court make a specific find-
ing that the youth is not amenable to the
rehabilitative programs currently existing
under the system as a condition precedent to
a valid waiver of jurisdiction.   However, it
does require the judge to carefully consider
this factor along with all other factors
set out by statute.

". . .

"Evidence relevant to each factor should be
preserved in the transcript in order to per-
mit meaningful appellate review.

". . .

-4-

"It is not necessary that all factors be res-
olved against the youth in order to justify
the waiver . . . However, all factors set
forth by statute must be carefully considered
and a very deliberate evaluation of each in-
dividual case must be effectuated prior to
the entry of a waiver order."

A review of the transcript of the hearing indicates
that both the statutory requirements as well as those enumerated
by this Court in Stevenson were met by the Youth Court judge
in the instant case.

The testimony of Todd, Robert and Niki, together with
the presence of N.C.F.'s handprint on the hidden sawed-off
shotgun, is sufficient evidence to constitute reasonable
grounds to believe N.C.F. committed the act alleged. That
act is a very serious offense, the deliberate killing of a
sixteen-year-old girl. There was also much testimony at the
hearing regarding N.C.F.'s frequent misuse of various kinds
of weapons, thus implying the danger he presents to the
community.

Testimony was given at the hearing by Ted Lechner,
Director of Court Services, Thirteenth Judicial District and
Elwin Ness, juvenile probation officer, regarding the facilities
and services provided by the Youth Court. The Department of
Institutions no longer places adjudicated youth at the
Swan River Youth Camp. Essentially, the only facility
available for N.C.F. is Pine Hills Boys' Home. However,
once a youth turns eighteen, Pine Hills begins proceedings
to dismiss the youth. N.C.F. turned eighteen on October 4,
1981. Pine Hills is, for all practical purposes, unavailable
to him.

Other services provided by the Youth Court are group
homes such as "The Ritz" in Great Falls, schooling, vocational

training, counseling and psychiatric evaluations. Therefore, there are really no appropriate Youth Court facilities or services available for the proper treatment of N.C.F.

Both Mr. Lechner and Mr. Ness recommended that jurisdiction by the Youth Court over N.C.F. be waived and transferred to the District Court. Their reasons for the recommendations were the inability of Pine Hills to meet the treatment needs of N.C.F., his size, his age, his independent lifestyle and his level of maturity. They also stated that it would be very difficult for Pine Hills to accommodate N.C.F. as their program is primarily for younger teenagers and it is very difficult to mix the two age groups in a detention facility.

The testimony and evidence presented at the hearing indicate that N.C.F. requires treatment and the community requires protection from N.C.F. beyond that afforded by juvenile facilities. Therefore, the criteria of section 41-5-206(1)(d)(ii), MCA, were satisfied.

Section 41-5-206(2)(d), MCA, requires the Youth Court judge to consider factors relating to the potential of the Youth Court facilities to reasonably rehabilitate N.C.F. She did so. She also determined that the youth would not be rehabilitated by the available Youth Court services and facilities. There is substantial credible evidence to support that determination. She adequately considered all factors required by section 41-5-206, MCA. Therefore, the Order of the Youth Court is affirmed.

_____
Justice

-6-

We Concur:

_Johns Conway Harrison_

_Jim B Daly_

_Daniel J Shea_

_____
Justices