No. 87-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

IN THE MATTER OF
K. M. H., a Youth.

_____

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bradley B. Parrish, Lewistown, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Patricia J. Schaeffer, Assistant Attorney General
Craig R. Buehler, Fergus County Attorney, Lewistown, Montana
Jon Oldenburg, Deputy Fergus County Attorney

_____

Submitted on Briefs: December 22, 1987

Decided: March 18, 1988

Filed: MAR 1 8 1988

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

K. M. H., a youth, appeals an order of the Tenth Judicial District Youth Court, Fergus County, waiving jursidiction and transferring K.M.H. from Youth Court to District Court. The Youth Court's order was based on a December 4, 1986, petition alleging that K.M.H. is a delinquent youth and alleging that K.M.H. committed deliberate homicide and attempted deliberate homicide.

We affirm.

The sole issue on appeal is whether the Youth Court abused its discretion when it transferred K.M.H. to District Court pursuant to § 41-5-206, MCA (1985)?

After careful review of the record, we hold the Youth Court did not abuse its discretion when it transferred K.M.H. to District Court. However, in order to protect appellant's right to a fair trial, we decline to detail the evidence produced at the transfer hearing. Additionally, we decline to name witnesses testifying at the Mary 11, 1987, transfer hearing.

At the May 11, 1987, transfer hearing, two of the State's witnesses, S.F. and John Moffatt made the following allegations. On the morning of December 4, 1986, K.M.H. brought a .41 magnum revolver to Fergus County High School. At approximately 1:17 p.m. on the same day, K.M.H. shot and killed a substitute French teacher, Henrietta Smith. Moments later, K.M.H. shot and seriously injured assistant principal John Moffatt. As Moffat lay wounded on the floor, K.M.H. fired again and missed.

On December 4, 1986, a petition was filed alleging that K.M.H. is a delinquent youth and alleging that he committed deliberate homicide and attempted deliberate homicide. Subsequent to filing the petition, appellant was sent to

2

Rivendell, formerly the Montana Youth Treatment Center, for a psychiatric evaluation. He was then enrolled in Pine Hills School for Boys.

On December 8, 1986, respondent moved to transfer the matter from Youth Court to District Court pursuant to § 41-5-206, MCA (1985). Section 41-5-206, MCA (1985),[1] provides in pertinent part:

> (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of prosecution to the district court if:
>
> (a)(i) the youth charged was 12 years of age or more at the time of the conduct alleged to be unlawful and the unlawful act would constitute sexual intercourse without consent as defined in 45-5-503, deliberate homicide as defined in 45-5-102, or mitigated deliberate homicide as defined in 45-5-103, or the attempt, as defined in 45-4-103, of either deliberate or mitigated deliberate homicide if the act had been committed by an adult . . . [and]
>
> . . .
>
> (d) the court finds upon the hearing of all relevant evidence that there are reasonable grounds to believe that:
>
> (i) the youth committed the delinquent act alleged;
>
> (ii) the seriousness of the offense and the protection of the community require

---

1    In 1987 the legislature in subsection (1)(d) substituted "is probable cause" for "are reasonable grounds" and deleted subsections (2)(c) and (2)(d).

> treatment of the youth beyond that
> afforded by juvenile facilities; and
>
> (iii) the alleged offense was committed
> in an agressive, violent, or premeditat-
> ed manner.
>
> (2) In transferring the matter of prose-
> cution to the district court, the court
> may also consider the following factors:
>
> (a) the sophistication and maturity of
> the youth, determined by consideration
> of his home, environmental situation,
> and emotional attitude and pattern of
> living;
>
> (b) the record and previous history of
> the youth, including previous contacts
> with the youth court, law enforcement
> agencies, youth courts in other juris-
> dictions, prior periods of probation,
> and prior commitments to juvenile insti-
> tutions. However, lack of a prior
> juvenile history with youth courts will
> not of itself be grounds for denying the
> transfer.
>
> (c) the severity of the offense;
>
> (d) the prospects for adequate protec-
> tion of the public and the likelihood of
> reasonable rehabilitation of the youth
> by the use of procedures, services, and
> facilities currently available to the
> youth court. [Emphasis added.]

Appellant K.M.H. contends the District Court abused its discretion when it found: (1) reasonable grounds to believe that the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and (2) reasonable grounds to believe the alleged offenses were committed in an aggressive, violent or premeditated manner.

4

Our standard when reviewing juvenile transfer proceedings is to determine whether the Youth Court abused its discretion by failing to consider all statutory criteria and whether substantial credible evidence supports the Youth Court's finding that juvenile facilities are inadequate in light of the "seriousness of the offense and the need to protect the community." Matter of B.D.C. (Mont. 1984), 687 P.2d 655, 658, 41 St.Rep. 1318. The youth may not be transferred simply because he has committed a serious offense. In re Stevenson (1975), 167 Mont. 220, 538 P.2d 5, 9.

A review of the record supports the findings, conclusions and order of the Youth Court. At the May 11, 1987, transfer hearing, the testimony of K.D. and M.R. and corroborated the assertions of S.F. that appellant knocked on the French classroom door and shot Henrietta Smith. This testimony, coupled with John Moffatt's testimony, constitutes reasonable grounds to believe that K.M.H. committed the crimes. The crimes, attempted deliberate homicide and deliberate homicide, are serious offenses. Matter of N.C.F. (Mont. 1982), 197 Mont. 390, 643 P.2d 236, 238.

Dr. H.S.N., medical director at Rivendell, testified that appellant suffers from schizotypal personality with a mild dysthymic disorder. He recommended that appellant live in a structured environment and receive treatment for several years. Additionally, Dr. H.S.N. stated that if appellant were faced with another stressful situation, another explosive reaction might occur.

A.D., superintendent of Pine Hills School for Boys, testified that Pine Hills is not an appropriate place to treat a "psychologically impaired youth who committed a homicide." D.D.R., administrator of the Division of Corrections, Department of Institutions, testified by deposition that if appellant was not transferred to District Court, the

Department of Institutions would lose all jurisdiction to treat and supervise him when he reaches age 21. M.F.O., chief probation officer for the Tenth Judicial District, testified that he felt appellant should be transferred to the adult system to allow adequate supervision for a significant number of years.

The Youth Court, in its findings and conclusions, indicated that appellant could not be properly supervised and treated if he remained under jurisdiction of the Youth Court:

> In summary, the most critical factor herein is the prospect for adequate protection of the public and the liklehood [sic] of reasonable rehabilitations of [K.M.H.] by use of procedures, services, and facilities currently available to the Youth Court. This Court cannot conclude with reasonable certainty that [K.M.H.] will not require supervision and possible further treatment after he reaches the age of 21 years. The Youth Court loses all jurisdiction and control of the youth at age 21. On the other hand, if the youth is transferred into the adult criminal Court there will be more options available for treatment (possible psychiatric treatment at Warm Springs State Hospital) and supervision (as Swan River Forest Camp, a Half-Way House, or Montana State Prison, or on probation or parole for a longer period of time). [Emphasis added.]

We hold that substantial credible evidence supports the Youth Court's finding that K.M.H. be transferred to District Court in light of the seriousness of the offenses and the need to protect the community.

Appellant also contends that substantial credible evidence does not support the Youth Court's finding the alleged offenses were committed in an aggressive, violent or premeditated manner. We do not agree.

The assertions of S.F. support the Youth Court's finding that appellant allegedly planned the shooting several days prior to the commission of the crimes. Appellant's alleged conduct constitutes aggressive, violent and premeditated execution of the deliberate homicide and aggressive and violent execution of the attempted deliberate homicide. Section 41-5-206, MCA (1985).

We hold the Youth Court did not abuse its discretion when it transferred the above-mentioned cause from Youth Court to District Court.

Affirmed.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_L. C. Gulbrandson_

_William E. Hunt, Sr._

_R. C. McDonough_

Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent, not so much from the logic of the majority (though the logic is faulty), as from the negligent unconcern of the legislature in failing to make adequate provision for youths like K.M.H.

While I respect the seal of the Youth Court on the facts of this case to protect K.M.H.'s fair trial rights, recitation of the following facts will not damage K.M.H.'s case, certainly not as much as the recitation of facts in the majority opinion. The Youth Court found that K.M.H. is seriously mentally ill and as such is a danger to other persons and to himself and that he is in need of intensive psychiatric care for an extended period of time; K.M.H. committed the acts when he was 14, is now 15, and the Youth Court would lose jurisdiction of him at age 21; the Youth Court was not satisfied that intensive psychiatric treatment during the period of six years for which the Youth Court had remaining jurisdiction was sufficient for K.M.H.'s rehabilitation; and then the Youth Court determined from the evidence that reasonable grounds existed that K.M.H. had committed the delinquent (criminal) acts with which he is charged.

In the adult court, K.M.H. as a defendant, if he is found not guilty for the reason that due to a mental disease or defect he could not have a particular state of mind that is an essential element of the offense charged, must be then committed to the custody of the superintendent of the Montana State Hospital to be placed in an appropriate institution for custody, care and treatment. Section 46-14-301(2), MCA. The truth is the people operating the Montana State Hospital do not want high risk placements, and so K.M.H. will shortly be

placed in the Montana State Prison or the Swan River Camp under some guise of further treatment. He is not eligible to go to Rivendell in Billings because it does not have security.

The elements of the crime of deliberate homicide in Montana are a voluntary act, (§ 45-2-202, MCA), coupled with either purpose or knowledge (§ 45-5-102, MCA). There is a lapse in logic, therefore, for the Youth Court and the majority of this Court to determine that K.M.H. must be transferred to the adult court for criminal prosecution because he is seriously mentally ill, when in the adult court, because he is seriously mentally ill, he may not be convicted of committing a crime. The majority and the Youth Court have been forced to this illogical position because the legislature has failed to make provision for the proper treatment of crazed youths even though the state constitution requires that laws for the punishment of crimes shall be founded on the principles of prevention and reformation. Art. II, § 28, 1972 Mont. Const.

The consequences are terrible for this 15 year old boy. Without overlooking his killing of one person and his assault with a deadly weapon upon another, we may note that historically no civilized governmental entity holds a person responsible for criminal conduct resulting from a lack of substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. American Law Institute, Model Penal Code, § 4.01(1) (1962). Yet Montana, in 1979, removed that defense from our criminal statutes, and placed it in the power of psychiatrists to opine to the jury whether the defendant had the particular state of mind which is an element of the offense charged. Section 46-14-213, MCA. (See my dissent in State v. Korell (Mont. 1984), 690 P.2d 992, 1005, 41 St.Rep.

2141, 2156.)   The likelihood is that this 15 year old boy will be sentenced to a long prison term in the adult court, and that facially, treatment for his mental condition will be ordered, but very little received.   In the meantime, he will be subjected to the company of male prisoners, half again, twice and three times his age.   In the adult court it is even possible for him to receive a death sentence.   In light of his immature age, his recognized mental illness, the bleak prospect of adequate treatment for him and his long years of prison life, it is almost not too callous to ask, "Oh death, where is thy sting?"

In this election year, every legislative candidate and gubernatorial candidate should be asked this important question, "What do you intend to provide for the treatment of youths out of control by reasons of mental illness?"

_____

Justice