NO. 94-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF J.D.W., A Youth
Under the Age of Eighteen

Defendant and Appellant.



FILED

OCT 04 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM: District Court of the Twenty-first Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena,
Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Barbara C.
Harris, Assistant Attorney General, Helena, Montana:
George H. Corn, Ravalli County Attorney, Hamilton,
Montana


Submitted on Briefs: July 6, 1994

Decided: October 4, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

J.D.W. appeals the order of the Youth Court of the Twenty-First Judicial District, Ravalli County, transferring this proceeding concerning criminal conduct to district court for treatment of the youth as an adult. We vacate the Order of the Youth Court dated February 9, 1994, and remand to the Youth Court for a hearing on the matter.

The sole issue on appeal is whether the Youth Court abused its discretion by ordering the proceeding transferred to District Court.

On January 6, 1994, the Ravalli County Attorney filed a petition alleging J.D.W. to be a delinquent youth based on his alleged participation in criminal activity that took place in November and December of 1993. J.D.W. was sixteen years old on October 24, 1993. The State alleged that J.D.W. had committed criminal offenses including accountability for criminal mischief (common scheme), two counts of burglary, accountability for another burglary, conspiracy to commit arson, possession of explosives and three counts of obscuring the identity of a machine.

J.D.W. admitted in an interview which took place on December 28, 1993, that he was involved in or participated in each of three separate burglaries of the Porter, Eden and Starr residences, which took place on November 12, November 26 and December 27, 1993, respectively. Also in that interview, J.D.W. told law enforcement authorities about an explosive device that had been constructed at another youth's home. This device was highly explosive and was

subsequently dismantled by law enforcement. Testimony at the hearing indicated that the bomb may have been built to blow up one of the three homes burglarized by the youths.

Numerous firearms were stolen in each of the three burglaries. In one of the homes, the guns were taken from a safe which was accessed with the aid of power tools. The "machines" involved in the charges of altering machines included a .357 Coonan automatic handgun, a Smith & Wesson Model 422 automatic, and a Colt MK - IV automatic. These were not the only firearms stolen in the burglaries.

The Youth Court determined that the residential burglaries committed by J.D.W. and two other youths were premeditated. One of the homes was ransacked during the burglary and had extensive damage done to it during the course of the burglary. In addition, there was testimony at the hearing on this matter that the youths may have intended to sell the guns, after altering the serial numbers, to students at Corvallis School. The firearms were not loaded when stolen, but were loaded at the time of confiscation.

Concurrently with the petition alleging delinquency, the State moved the Youth Court to transfer the matter for prosecution in District Court rather than Youth Court, alleging that the offenses committed by J.D.W. were premeditated and of such seriousness and magnitude that the protection of the community needed to be insured for a longer time beyond that which could be afforded under the Youth Court Act.

When charged with the above offenses, J.D.W. was on Youth

3

Court probation for a 1992 shooting of another youth with an air rifle, which resulted in the blinding of an eye. The pertinent terms of probation for the 1992 offense were that J.D.W. was not to be in possession of or to use a firearm, except when hunting with his father, and that he obey all laws. J.D.W.'s probation has been revoked in connection with this proceeding and he is currently incarcerated in the Kalispell Juvenile Detention Center pending its outcome.

Did the Youth Court abuse its discretion by ordering the proceedings in this matter transferred to District Court?

The Montana Youth Court Act authorizes transfer of cases from youth court to district court for treatment as an adult under certain circumstances set forth in § 41-5-206, MCA, as follows:

> 41-5-206. Transfer to criminal court. (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of prosecution to the district court if:
> (a) . . .
> (ii) the youth charged was 16 years of age or more at the time of the conduct alleged to be unlawful and the unlawful act is one or more of the following:
> . .
> (E) burglary or aggravated burglary as defined in 45-6-204;
> . . .
> (G) possession of explosives as defined in 45-8-335:
> . .
> (J) attempt, as defined in 45-4-103, of any of the acts enumerated in subsections (1)(a)(ii)(A) through (1)(a)(ii)(I);
> . . .
> (d) the court finds upon the hearing of all relevant evidence that there is probable cause to believe that:
> (i) the youth committed the delinquent act alleged:
> (ii) the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and
> (iii) the alleged offense was committed in an

4

aggressive, violent, or premeditated manner.

(2) In transferring the matter of prosecution to the district court, the court may also consider the following factors:

(a) the sophistication and maturity of the youth, determined by consideration of the youth's home, environmental situation, and emotional attitude and pattern of living:

(b) the record and previous history of the youth, including previous contacts with the youth court, law enforcement agencies, youth courts in other jurisdictions, prior periods of probation, and prior commitments to juvenile institutions. However, lack of a prior juvenile history with youth courts will not of itself be grounds for denying the transfer.

. .

(4) . Upon transfer to district court, the judge shall make written findings of the reasons why the jurisdiction of the youth court was waived and the case transferred to district court.

J.D.W. contends that the Youth Court incorrectly drew inferences from the evidence presented through the testimony of Deputy Bruce Hennell, who essentially opined that the burglaries, possession of explosives and conspiracy to commit arson were serious offenses involving loaded firearms which were going to be sold at the Corvallis School. He further contends that the court incorrectly decided that it did not need any evidence on the adequacy of the juvenile facilities and incorrectly assumed that the juvenile facilities were inadequate based on the average length of stay at Pine Hills School for Boys (Pine Hills). J.D.W. maintains that by concluding that the juvenile facilities in Montana are inadequate to deal with a juvenile offender such as J.D.W., the Youth Court completely ignored the rehabilitative purpose of the Youth Court Act and instead focused only on retribution.

5

To begin our discussion, we emphasize that one of the stated purposes of the Montana Youth Court Act is

> to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care, rehabilitation, and, in appropriate cases, restitution as ordered by the Youth Court.

Section 41-5-102(2), MCA. Therefore, our review of the Youth Court's Order transferring this case to District Court, where J.D.W. will likely be placed in the custody of the Department of Corrections rather than the Department of Family Services, necessarily must ensure that the Youth Court has determined after careful consideration that the available juvenile facilities in Montana are inadequate in this case.

The overall standard of review applicable here is whether the Youth Court abused its discretion in ordering the transfer of the case to District Court for prosecution. In the Matter of J.A. (1992), 255 Mont. 214, 216, 841 P.2d 1130, 1131. As to specific findings of fact relied on by the Youth Court in making the decision to transfer the case to District Court, the standard is whether such findings are clearly erroneous according to the test set forth in Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. J.A., 841 P.2d at 1131. The first prong of the DeSaye test addresses whether the findings are supported by substantial evidence.

In accord with § 41-5-206(1)(d)(i), MCA, J.D.W. conceded there was probable cause to believe he committed the alleged offenses, but argued that the seriousness of the offense and protection of

6

the community did not require treatment beyond that afforded by juvenile facilities. His argument pursuant to § 41-5-206(1)(d)(iii), MCA, that the offenses were not committed in a premeditated manner, is that the Youth Court's finding that the acts were "premeditated" is not the same thing as "in a premeditated manner." We agree with the State that this is a distinction without a difference. In addition, we conclude that there is substantial evidence in the record that the offenses were premeditated.

The critical determination we are concerned with on appeal, however, is § 41-5-206(1)(d)(ii), MCA--whether the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities. The Youth Court stated:

> THE COURT: Well, in that regard, I'll take judicial notice of the nature of the Youth Court system and specifically the fact that the most I can do in Youth Court is make an indefinite commitment to DFS. I can't order DFS to retain anybody for any length of time . . .
>
> Whereas in adult court, I have more power over the Department of Corrections, and I can make definite commitments timewise to the Department of Corrections, but I simply don't have that ability anymore under the statutes with the Department of Family Services.
>
> Furthermore, I'll take notice of the fact that . . . the commitment has to be indefinite, but the average length of time that youths are kept at Pine Hills, as I recall, [is] in the range of three to four months, and it's rare that they're kept longer. At this point, there are really no other youth detention facilities in the state of Montana that are available. So I don't think I need any evidence.

The Youth Court took judicial notice of the history of Youth Court commitments in general. No evidence was presented as to whether

7

the treatment to be afforded the youth in this case from Pine Hills and the Youth Court System would be adequate for J.D.W.'s rehabilitation. To the contrary, the court emphasized the inability under the Youth Court system to incarcerate J.D.W. beyond the average length of time at Pine Hills after a commitment there versus the length of time J.D.W. could be incarcerated or under the control of the court under the criminal court system if proceedings were transferred out of Youth Court. Furthermore, no findings were set forth by the court to support the conclusion that facilities under the Youth Court system are inadequate for treating J.D.W..

Prior cases addressing this same issue are helpful in addressing the question before us. In In the Matter of Stevenson (1975), 167 Mont. 220, 228, 538 P.2d 5, 9, the Court discussed the requirement of what is now § 41-5-206(1)(d)(ii), MCA, in a similar factual situation where the Youth Court had waived jurisdiction because of the seriousness of the offense. The youth contended that the transfer hearing was inadequate because there was no evidence presented to show that juvenile facilities were inadequate. The State argued that the very nature of the offenses demonstrated the need for treatment of the youth beyond available juvenile facilities. The Court stated:

> We cannot agree. To assume that juvenile facilities are inadequate from the mere fact that the youth is charged with a serious offense, completely ignores the rehabilitative purpose of the Act . . . and is tantamount to a judicial admission the juvenile facilities in Montana are inadequate to cope with the hard core youth offender. We will not do this.
>
> . . . there was no inquiry into the important question of whether Stevenson could be rehabilitated

8

within the present structure of the youth system. As a related matter, there was no inquiry into the availability of facilities, programs and personnel under the youth court system and whether he would be amenable to these. Y e a judicial consideration of this factor is required by [§ 41-5-206, MCA].

Stevenson, 538 P.2d at P-10. Stevenson further stated that the Montana Youth Court Act does not require that the court make a specific finding that the youth is not amenable to the rehabilitative programs currently existing for a valid waiver of youth court jurisdiction, but it does require the judge to carefully consider this factor along with all other factors set out by the statute on transfer. Stevenson, 538 P.2d at 10. Stevenson further cited an article on waiver of youth court jurisdiction which stated that juvenile court personnel and judges regard waiver of youth court jurisdiction as the most severe sanction that may be imposed by juvenile court because

the probability of severe punishment [and] the confidentiality and individuality of the juvenile proceeding is replaced by the publicity and normative concepts of penal law [and] the child acquires a public arrest record which, even if he is acquitted, will inhibit his rehabilitation because of the opprobrium attached thereto by prospective employers . . . .

Stevenson, 538 P.2d at 10, citing F. Thomas Schornhorst, The Waiver of Juvenile Court Jurisdiction: Kent Revisited, 43 Ind. Law Journal 583, 586. Stevenson held that a proper transfer hearing requires the youth court to hear evidence relating to all factors set forth in § 41-5-206, MCA, and preserve that evidence in the transcript which will permit a meaningful appellate review and to make written findings giving reasons why the jurisdiction of the youth court is being waived. "[A]ll factors set forth by statute must be

9

carefully considered and a very deliberate evaluation of each individual case must be effectuated prior to the entry of a waiver order." Stevenson, 538 P.2d at 10.

Subsequently, in In the Matter of K.M.H. (1988), 231 Mont. 180, 183, 752 P.2d 162, 164, a case concerning a transfer hearing, we affirmed the order of a youth court transferring the youth to adult court where a medical director from a psychiatric treatment facility testified that the youth in question suffered from a schizotypal personality with a mild dysthymic disorder, recommended that the youth live in a structured environment and received treatment for several years and opined that the youth could have another explosive reaction if faced with a similarly stressful situation. In K.M.H., the superintendent of Pine Hills testified that Pine Hills was not an appropriate place to treat a "psychologically impaired youth who committed a homicide." K.M.H., 752 P.2d at 164. The youth court in K.M.H. considered these and other factors before determining that the Youth Court system was inadequate for the length of time needed for psychiatric treatment of the youth and that the adult court system was in a better position to afford the appropriate psychiatric treatment needed by K.M.H. K.M.H., 752 P.d at 165.

In this case, there was no recommendation from the staff at Pine Hills, nor is there any evidence in the record that anyone from that facility or from the Department of Family Services or an appropriate psychiatric facility was ever contacted regarding this matter. What we have here is a summary determination by the Youth

10

Court that the average length of stay at Pine Hills is inadequate for rehabilitation in this case. There is nothing in the record to support this determination. There is no testimony or other evidence from the staff at Pine Hills or anyone else that could indicate that the rehabilitative question--the purpose of the Montana Youth Court Act--was considered by the Youth Court. Therefore, we conclude that the Youth Court's decision to transfer this matter to District Court for the sole reason of retaining control over his length of incarceration is an improper waiver of youth court jurisdiction.

We hold the Youth Court abused its discretion by ordering the proceedings transferred to District Court.

The Order of the Youth Court transferring this matter to District Court is vacated and the cause is remanded to the Youth Court for a further hearing and redetermination.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11