NO.   94-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF J.K.C.,
        A Youth.


APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Jeffrey T. McAllister; Conklin, Nybo, LeVeque &
                Murphy, Great Falls, Montana


        For Respondent:

                Hon. Joseph P. Mazurek, Attorney General, Micheal S.
                Wellenstein, Ass't Attorney General, Helena, Montana

                Patrick L. Paul, Cascade County Attorney, Great
                Falls, Montana

Submitted on Briefs:   February 9, 1995

Decided:   March 23, 1995

Filed:   MAR 23 1995

FILED

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

J.K.C. appeals from an order of the Eighth Judicial District Youth Court, Cascade County, waiving jurisdiction and transferring his case from Youth Court to District Court. We reverse.

BACKGROUND

The facts the State alleges which lead to the case against J.K.C. are as follows. On April 4, 1994, J.K.C., who was fourteen years old at that time, was scheduled to accompany his adoptive parents to the Great Falls police station to discuss allegations of J.K.C.'s misconduct unrelated to the charges in this case. Before the appointment at the police station, J.K.C. ran away from home. J.K.C. had a handgun in his possession and stole the keys to a car at Rice Motors' car lot. On the evening of April 4, 1994, J.K.C. and another youth went to Rice Motors and stole the car.

J.K.C. and the other youth eventually drove to Anne Kolstad's house. While carrying the handgun, J.K.C. went to Kolstad's door, broke out a window in her door, and demanded money from her. Kolstad hid to the side of her door and called 911. J.K.C. retreated to the car without taking anything from Kolstad. The two youths then drove to a convenience store. J.K.C. filled the car with gas and entered the store. Once inside, he asked the clerk something to the effect of "Doesn't it suck working nights?" J.K.C. then shot the clerk twice. The clerk was not killed. J.K.C. was apprehended in the early morning hours of April 5, 1994.

On April 5, 1994, the State filed a petition in Youth Court alleging that J.K.C. was a delinquent youth and had committed

attempted deliberate homicide, attempted robbery, and felony theft. On April 20, 1994, the State moved the Youth Court for an order to transfer the case against J.K.C. from Youth Court to District Court. The Youth Court held a hearing on the motion to transfer J.K.C.'s case on June 21, 1994. On July 12, 1994, the Youth Court entered its order transferring all three charges against J.K.C. to District Court.

One issue raised on appeal is dispositive: Whether the Youth Court erred in ordering J.K.C.'s case transferred to District Court.

STANDARD OF REVIEW

We review orders transferring a matter from youth court to district court to determine whether the youth court abused its discretion. In the Matter of T.N. (Mont. 1994), 881 P.2d 1329, 1332, 51 St.Rep. 955, 956 (citing In the Matter of J.A. (1992), 255 Mont. 214, 841 P.2d 1130). This Court will not find an abuse of discretion where there is substantial credible evidence to support the findings of the youth court. Matter of T.N., 881 P.2d at 1332.

DISCUSSION

Section 41-5-206, MCA, controls transfers from youth court to district court. It provides in relevant part:

> (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of prosecution to the district court if:
>     (a) (i) the youth charged was 12 years of age or more at the time of the conduct alleged to be unlawful and the unlawful act would constitute . . . the attempt, as defined in 45-4-103, of either deliberate or mitigated deliberate homicide if the act had been committed by an adult;

3

. . . and
(d) the court finds upon the hearing of all relevant evidence that there is probable cause to believe that:
(i) the youth committed the delinquent act alleged;
(ii) the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and
(iii) the alleged offense was committed in an aggressive, violent, or premeditated manner.

J.K.C. contends that the State failed to demonstrate that the seriousness of the offense and the protection of the community require treatment beyond that afforded in juvenile facilities as required by § 41-5-206(1)(d)(ii), MCA.

One of the purposes of the Montana Youth Court Act is "to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care, rehabilitation, and, in appropriate cases, restitution as ordered by the youth court . . . ." Section 41-5-102(2), MCA. We previously have stated that:

> To assume that juvenile facilities are inadequate from the mere fact that the youth is charged with a serious offense, completely ignores the rehabilitative purpose of the [Youth Court] Act . . and is tantamount to a judicial admission the juvenile facilities in Montana are inadequate to cope with the hard core youth offender. We will not do this.

In the Matter of J.D.W. (Mont. 1994), 881 P.2d 1324, 1328, 51 St.Rep. 958, 961 (quoting In the Matter of Stevenson (1975), 167 Mont. 220, 228, 538 P.2d 5, 9). In Matter of Stevenson, the youth was accused of committing, or being legally accountable for, attempted robbery and aggravated assault as a result of an attempted armed robbery in which the proprietor of a grocery store was severely wounded by a shotgun blast. The youth court ordered

4

the case transferred to district court. This Court remanded the case because the seriousness of the offense alone did not demonstrate that juvenile facilities were inadequate. Matter of Stevenson, 538 P.2d at 9.

The State contends that it offered sufficient testimony to uphold the transfer from Youth Court to District Court. However, the testimony in the case does not support the State's position.

Caroline Tyler, a deputy juvenile probation officer who was assigned to J.K.C.'s case, testified that J.K.C. had emotional problems that could be effectively treated in the juvenile system. She also testified that she did not think the adult system offered appropriate treatment programs for J.K.C. and that J.K.C.'s case should not be transferred to District Court. Richard Boutilier, the chief juvenile probation officer for Cascade County, testified that it was his opinion that J.K.C. 's case should be transferred to District Court so J.K.C. could be supervised beyond the age of 18 or 19. Boutilier testified that J.K.C. should remain in the juvenile system until age 18 to receive the services available in the juvenile system. He stated that the juvenile system had sufficient resources to treat J.K.C. up to the age of 18 or 19. He also expressed his opinion that the juvenile system offered J.K.C. a better rehabilitation program than the adult system does. Boutilier admitted that there was no evidence that J.K.C. would need treatment or supervision beyond the age of 19. On cross-examination, Boutilier stated that his opinion that J.K.C.'s case should be transferred to District Court was based solely on the

5

seriousness of the offenses charged.

The State cites In the Matter of K.M.H. (1988), 231 Mont. 180, 752 P.2d 162, and Matter of T.N., supra, in support of its position that there was sufficient evidence to justify a transfer to district court. However, both are distinguishable from the present case. In Matter of K.M.H., testimony was offered that the youth could very possibly repeat his destructive behavior and that juvenile facilities were inappropriate for his treatment. Matter of K.M.H., 752 P.2d at 164. In Matter of T.N., testimony was offered that the youth could feel pressured into committing similar violent behavior, that Pine Hills was inadequate for the youth's treatment, and that other juvenile treatment centers probably would not accept the youth. Matter of T.N., 881 P.2d at 1332-33.

In the present case, no testimony was offered that juvenile facilities would be inappropriate for J.K.C. In fact, both Tyler and Boutilier testified that J.K.C. should be rehabilitated in the juvenile system, although Boutilier testified that J.K.C. should be transferred to the adult corrections system after the age of 18.

This case is also distinguishable from Matter of J.D.W., 881 P.2d at 1327-28, where the youth court transferred jurisdiction relying on the fact that the youth court would not have jurisdiction over the youth for as long as the district court. We held that it was error to transfer the youth's case to district court without taking any evidence as to whether the juvenile system would be adequate for the youth's rehabilitation. Since no evidence was offered on the adequacy of the juvenile system, we

6

remanded the case for a further hearing and redetermination. Matter of J.D.W., 881 P.2d at 1329.

Here, the testimony of several witnesses indicates that the juvenile system is adequate to treat J.K.C. Dave Peterson, a juvenile parole officer for the Department of Family Services, testified that Pine Hills juvenile facility currently holds youths who have committed serious offenses, and that Pine Hills is a secure facility. Tyler stated that J.K.C. should be treated in the juvenile system and that the adult court system did not offer sufficient rehabilitation. Boutilier recommended that J.K.C. be placed in a juvenile facility for treatment until reaching the age of 18. He also conceded that his belief that the case should be transferred to District Court was based solely on the seriousness of the offenses charged. The testimony of Tyler and Boutilier does not indicate that juvenile facilities are inadequate to deal with J.K.C. In fact, their testimony indicates just the opposite. There is no substantial credible evidence to support the Youth Court's findings. We hold that the Youth Court abused its discretion by ordering J.K.C.'s case transferred to District Court.

With respect to the dissent, it must be pointed out that in Matter of J.D.W., we remanded because the Youth Court simply took judicial notice that, in the court's view, Pine Hills and the Youth Court system were inadequate for the youth's rehabilitation. The State did not have an adequate opportunity to present evidence on that issue. To the contrary, in the instant case, the State had every opportunity to present evidence and testimony on the issue of

7

the adequacy of the juvenile facility; it simply failed to do so and, accordingly, failed to meet its statutory burden of proof. While this Court is as appalled as the dissent at the aggressive, violent and premeditated nature of the youth's conduct, nevertheless, the State having had its day in court, there is no legal basis upon which to send this case back to the Youth Court on the premise that at some point the prosecution will finally get it right.

We reverse the order of the Youth Court transferring jurisdiction to District Court. The Youth Court shall assume jurisdiction of the case.

_W. William Dayhurt_
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Justice Fred J. Weber concurs and dissents as follows:

I agree with the majority opinion in its holding that the Youth Court abused its discretion by ordering J.K.C.'s case transferred to District Court. As a result I concur in the reversal of the order of the Youth Court which transferred jurisdiction to the adult District Court. My dissent from the majority opinion is at this point. I would remand the case to Youth Court for a further hearing and a redetermination of the issue of the transfer to adult District Court.

The majority opinion refers to Matter of J.D.W. (Mont. 1994), 881 P.2d 1324, 51 St.Rep. 958. In Matter of J.D.W. this Court concluded that the order of the youth court transferring the matter to district court was vacated, and the cause was remanded to the youth court for a further hearing and redetermination. I believe the same procedure should be followed here.

In Matter of J.D.W., this Court pointed out that the critical determination was whether the seriousness of the offense and the protection of the community required treatment of the youth beyond that afforded by the juvenile facilities. That is the identical issue which is before us in our present case. In Matter of J.D.W., the judge took judicial notice of the limited type of commitment he could make – he could only commit to the Department of Family Services and that commitment had to be indefinite. In addition the judge pointed out that the average length of time that youths were kept at Pine Hills was three to four months which was not an adequate time for a youth charged with a serious crime. This Court

pointed out in its opinion that there was an absence of any recommendation from staff or other persons to demonstrate that J.D.W. could not be properly treated in a youth court facility. As a result, this Court concluded there was an improper waiver of jurisdiction, and reversed the decision of the district court and remanded the case to the same court for a further hearing and redetermination of the issue.

In contrast to Matter of J.D.W., in the present case there was considerable evidence presented by three different parole and probation officers as to the treatment available in the system and as to their opinions as to the adequacy and inadequacy of the system. The majority has concluded that evidence was not adequate and I agree with that conclusion. However, in the same manner as in Matter of J.D.W., I conclude that it is essential in fairness to all involved that the case be remanded to the Youth Court for a further hearing and a redetermination of the issue of transfer. In reaching this conclusion, I note that the defendant does not contest the Youth Court finding that his crime of attempted deliberate homicide was committed in an aggressive, violent, or premeditated manner. The testimony presented to the District Court established that J.K.C. initially demonstrated his aggressive and violent behavior when he attempted with a handgun to rob an 87 year old woman whom he knew from his paper route. Next, after that unsuccessful robbery, J.K.C. suggested robbing the Gas-A-Matt and devised the plan. After pumping gas, J.K.C. entered the store, said to the clerk, "Doesn't it suck working nights?" and then shot

10

the clerk twice with a 9mm pistol in a clear attempt at deliberate homicide.

I would therefore remand this cause to the Youth Court for a further hearing, following an examination by a qualified mental health expert, and a redetermination of the issue with specific findings and conclusions on the statutory requirements.

_____
Justice

Chief Justice J.A. Turnage concurs in the foregoing special concurrence and dissent.

_____
Chief Justice

11

March 23, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Jeffrey T. McAllister, Esq.
Conklin, Nybo, Leveque & Murphy
P.O. Box 1049
Great Falls, MT 59403-2049

Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT 59620

Patrick L. Paul
County Attorney
Cascade County Courthouse
Great Falls, MT 59401


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy